NORTHERN INDIANA STEEL SUPPLY COMPANY, INC.
*v.* CHRISMAN.

[No. 19,898. Filed March 1, 1965. Rehearing denied April 1, 1965. Transfer denied May 2, 1966.]

28

*Stephen A. Milwid, Thomas L. Stevens* and *Lord, Bissell & Brook,* of counsel, of Chicago, and *Warren J. Rommes,* of Michigan City, for appellant.

*William T. Oare, Seibert, Oare, Deahl & Thornburg,* of South Bend, and *Stevens & Wampler,* of Plymouth, for appellee.

HUNTER, J.—This is an appeal from an action instituted by plaintiff-appellant, a lessor corporation, against defendant-appellee for damages arising from an agreement by the

appellee guaranteeing payment of rent and performance of certain covenants on the part of the lessee corporation, Pal Products, Inc. The trial by court resulted in a finding and judgment for appellant against appellee in the amount of Four Thousand Seven Hundred and Fifty-Five ($4,755.00) Dollars as damages for the failure of the lessee to keep the leased premises in a satisfactory state of repair during the lessee's occupancy. However, the trial court did not award damages to the lessor for alleged loss of rent and taxes that lessor claims is due from the guarantor for the remaining term of the lease.

The pertinent facts as set forth in the court's special findings in this case are as follows:

On January 19, 1955, appellant leased by a written leasing agreement to Pal Products, Inc., certain real estate, fixtures and personal property. The realty contained factory buildings and other improvements. Also included in the agreement was a lease of an amount of machinery and equipment totaling two hundred and twenty-one (221) items and office furniture and fixtures.

In consideration of the leasing, the lessee Pal Products, Inc., agreed to pay lessor the sum of Sixty-Eight Thousand ($68,000.00) Dollars per year for the premises and equipment for a term of three (3) years from January 19, 1955 to January 18, 1958. This annual rent was payable in monthly installments of Five Thousand Six Hundred and Sixty-Six Dollars and Sixty-Seven Cents ($5,666.67). Part of the consideration for the lease was the lessee's promise to keep the premises in a satisfactory state of repair.

Concurrent with the execution of the leasing agreement, John Chrisman, the appellee executed a written guaranty by which he guaranteed all the covenants of the lease.

The lessee, Pal Products, Inc., paid to the lessor all monthly rental payments due under the lease to and including March 18, 1956. Before that date, on February 27, 1956, appellant-

lessor made a written demand upon the lessee for the repossession of all the property of said lease, asking for surrender within ten (10) days. Lessee surrendered the property on or before March 13, 1956, and lessor took possession on or before said date of March 13.

The court found from the evidence that on March 13, 1956, lessor sold and allowed the removal of substantially all the machinery, equipment, furniture and fixtures that was the subject matter of the lease, such sale and removal being accomplished *without the knowledge, consent or ratification of the guarantor*. Thereupon, lessor, again without the consent of either the lessee or the guarantor, demanded a lesser rental figure for the property without an agreed change being made in either the leasing agreement or the contract of guaranty. Upon all of the special findings of fact, the court stated the following conclusions of law.

"1. The lease between plaintiff as lessor and Pal Products, Inc., as lessee, terminated on the 13th day of March, 1956, by an acceptance of the surrender of said lease.

2. Regardless of the termination of the lease as aforesaid the defendant, as guarantor, is not (and would not be) liable for any default of the lessee, Pal Products, Inc., after the date of March 13, 1956.

3. The law is with the defendant on all issues involved in this action with the exception that the defendant is liable to the plaintiff in the sum of Four Thousand Seven Hundred Fifty-five Dollars ($4,755.00) for damages suffered by plaintiff by reason of the failure of lessee Pal Products, Inc., to keep the leased premises in a satisfactory state of repair during the said lessee's occupancy of the leased premises prior to March 13, 1956."

Appellant asserts four (4) assignments of error for reversal: they are that

(1) The trial court erred in overruling the motion of plaintiff (appellant) for a new trial;
(2) the trial court erred in its conclusion of law No. 1;
(3) the trial court erred in its conclusion of law No. 2; and
(4) the trial court erred in its conclusion of law No. 3.

An examination of the separate conclusions of law indicates that conclusions of law Nos. 1 and 2 are alternative; that is, either one standing alone would seem to be sufficient to discharge the appellee from liability. Therefore, as will be seen from the discussion hereinafter, our consideration will center on the question of the termination of the lease by operation of law. Appellant thus seriously advances the following question for our consideration:

Did the trial court err in holding that the lessor and lessee had acted sufficiently to terminate the guarantor's obligations on the lease?

Appellee guaranteed performance of all the covenants of the lease by written guarantee as an absolute guarantor. The liability of a guarantor is usually measured by the liability of the principal. 38 C. J. S., Guaranty, § 50, p. 1203, citing *Spitz* v. *Nunn,* 34 Ohio App. 397, 171 N. E. 117, 118.

Therefore, discharge of the principal from its obligation on a contract will ordinarily discharge the guarantor. *Indianapolis Morris Plan Corp.* v. *Sparks* (1961), 132 Ind. App. 145, 153, 172 N. E. 2d 899; 38 C. J. S., Guaranty, § 77, p. 1245. The trial court in the instant case held that the guarantor was discharged from liability on the lease because the lessee had been relieved from its obligations as a result of a surrender of the least by the lessee and an acceptance of such by the lessor through operation of law. A release of the lessee because of surrender and acceptance of the lease by operation of law will also release the guarantor. See *Weil* v. *Waterhouse* (1910), 46 Ind. App. 690, 691, 91 N. E. 746.

We must thus examine the law as to what constitutes a surrender and acceptance of a lease by operation of law such as would relieve a lessee from his liability thereon. These principles must guide us in the determination of the validity

of the trial court's holding that the lease was terminated, which holding is questioned by this appeal.

When there exists an express covenant of lease on property, there are present between the lessor and lessee two types of relationship, (1) privity of estate (the leasehold), and (2) privity of contract (the lease). *Powell* v. *Jones* (1912), 50 Ind. App. 493, 497, 98 N. E. 646.

In order that there be a surrender and acceptance of a lease, there must be some form of mutual agreement between the parties to the effect that the lease should cease to be binding on them. This agreement must cause a separation of the privity of contract when there is a written lease. Such a covenant releasing lessee's liability may be either (1) express, or (2) by operation of law. *Miller Jewelry Co.* v. *Dickson* (1942), 111 Ind. App. 676, 686, 42 N. E. 2d 398; *Powell* v. *Jones, supra,* at p. 496; *Heller* v. *Dailey* (1901), 28 Ind. App. 555, 567, 63 N. E. 490. Termination of the lease by operation of law is implied from the acts of the parties. *Heller* v. *Dailey, supra,* at p. 567. The acts of the parties must be so inconsistent with the subsisting relationship of landlord and tenant, that it may be implied that both lessor and lessee have agreed to consider the lease as ended. *Miller Jewelry Co.* v. *Dickson, supra; Carp & Co.* v. *Meyer* (1929), 89 Ind. App. 490, 493, 167 N. E. 151; *Powell* v. *Jones, supra,* at p. 496-497.

Various factual situations have been considered by our Indiana courts in regard to surrender and acceptance of leases. In *Powell* v. *Jones, supra,* the court held that by the *sole* act of collecting rent from a sub-lessee of the leased premises, the landlord did not act sufficiently to discharge the original lessee from his obligation. Also see *Heller* v. *Dailey, supra,* where it is stated that where there is a sub-lease, the original lessee is discharged only when the lessor assumes an attitude inconsistent with the continuance of the contract relation between lessor and original lessee, and has treated the sub-lessee as his own tenant.

*Carp & Co.* v. *Meyer, supra,* held that the first lessee was liable for rent to the time that a second tenant took possession. It seems that the court concluded that the lessor had accepted the surrender when he re-leased the property to another, although the second leasing was within the term of the original lease to the first tenant.

In *Donahoe et al.* v. *Rich* (1891), 2 Ind. App. 540, 28 N. E. 1001, lessors agreed to accept a surrender of the premises and release lessee from liability under the lease, and accept another tenant in place of the original lessee. The lessee then gave up the property with this understanding. These facts constituted a surrender and an acceptance that relieved the original lessee from further liability.

Our Supreme Court considered the adequacy of findings of facts, which the trial court had concluded constituted a surrender by operation of law in *Paxton Realty Corp.* v. *Peaker* (1937), 212 Ind. 480, 9 N. E. 2d 96. There, the original lessee abandoned the premises and returned the key therefor to the lessor. The lessor then re-let the premises to another lessee. There were also material alterations made to the premises without the consent or approval of the original lessee after said lessee vacated the premises. The Supreme Court upheld the trial court's holding that these acts were sufficient to constitute a surrender by operation of law terminating the lease, citing the *Carp* and *Powell* rules, *supra.*

From our examination of the diverse facts and holdings of the decisions in Indiana on the question of surrender and acceptance by operation of law, we can only conclude that each case must stand upon its own facts, these facts being the acts of the parties.

Appellant urges that the facts in the instant case do not support the trial court's holding that there was a surrender and acceptance by operation of law. There is evidence in the record to support the special findings of fact, thus these findings are not open to attack.

The findings state the following facts tending to indicate a surrender and acceptance of the lease by operation of law: On February 27, 1956, lessor made a written demand upon lessee for re-possession of the lease property, asking that possession be surrendered within ten (10) days. The property was surrendered by lessee on or before March 13, 1956. Lessor then took possession of all the property forming the subject matter of the lease. On March 13, 1956, lessor without the knowledge, consent or ratification of the appellee, sold and allowed the removal of a substantial portion of the assets forming the subject matter of the lease, which was practically all of the furniture, fixtures, and manufacturing equipment which were included in the leasing agreement.

Lessor then without consent of appellee or lessee demanded a new rental figure despite a lack of an agreed modification of the lease; nor was there any standard clause of apportionment in the lease which took into account the lessened value of the property after the sale of substantially all of the manufacturing equipment and miscellaneous property related thereto.

Because of the sale and removal of the equipment and furniture from the premises, the nature and utility of the property was changed from that of a substantially equipped metalworking factory to a virtually empty building. Later, in September, 1957, still within the term of the lease, lessor sold the remaining property that had constituted the subject matter of the lease.

Appellant wishes us to consider facts other than the court's findings, asserting that the additional facts plus the findings do not support the trial court's decision. The additional consideration requested centers around the fact that the lessee corporation would become bankrupt, and would inevitably have been in default on the lease. The fact of impending bankruptcy of the lessee does not seem to be material to the question of acceptance of the lease by lessor.

The lessor elected to act as it did, and its acts are determinative of the question of *acceptance* of the lease. Lessor alone, asked for possession of the property which was surrendered by lessee; lessor alone, sold all of the equipment out of the factory; lessor alone, demanded a new rental figure without indicating a proper apportionment between the old rental figure and the new one, nor indeed without changing the agreement with the lessee on the new figure demanded; lessor alone, caused the property to be changed from a metal-working factory to an "empty shell" as found by the court.

*Especially by the act of altering the premises so that it was reduced to a "shell,"* the lessor must be deemed to have accepted the surrender. See *Paxton Realty Corp.* v. *Peaker, supra,* where one of the principal acts showing acceptance was the altering of the premises. Also see 110 A. L. R., Landlord and Tenant, § 71, p. 369, and 32 Am. Jur., Landlord and Tenant, § 913, p. 774-775. The parties have thus attained a relationship so inconsistent with the subsisting relationship of landlord and tenant that we must imply that both lessor and lessee have agreed to consider the lease as ended; stated in another manner, after surrender by lessee, there has been an acceptance by lessor of an exclusive character with the apparent intention of occupying and controlling the premises as its own to the exclusion of the lessee, in case the latter should desire to return. *Babsdon Co.* v. *Thrifty Parking Co.* (1963), Fla. App., 149 So. 2d 566, 568.

We therefore hold that the trial court did not err in its conclusion of law that the lease was terminated by reason of the surrender of such by the lessee and acceptance thereof by the lessor.

Appellant further insists that a covenant in the lease commonly entitled a "savings clause" should be enforced notwithstanding any termination of the lease by operation of law. The covenant sought to be enforced reads as follows:

"15. If the lessee shall neglect or fail to make any of the payments of the rent, or any part thereof, within ten (10)

days after the same become due, or if the lessee shall neglect or fail to perform or observe any of the covenants . . . the lessor may lawfully enter into and upon the said premises or any part thereon in the name of the whole, and repossess the same . . . and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant, and upon entry as aforesaid, this lease shall terminate and wholly expire, and the lessee covenants that in case of such termination, it will indemnify the lessor against all *loss of rent* which the lessor may incur by reason of such termination during the residue of the term above specified . . .'' (our emphasis)

To determine whether this clause should be effective although there has been a surrender and acceptance of the lease by operation of law, let us first examine the *effect* of such a termination of a lease. This court has held in *Donahoe et al.* v. *Rich, supra,* at p. 545:

"It is well settled that if the tenant surrender the premises and yields up the possession, and the same are accepted by the landlord, *the lease and all liability under it for the future rent are extinguished.*" (citing *Terstegge* v. *The First German Mutual Benevolent Society et al.* (1883), 92 Ind. 82.) (our emphasis)

This rule is stated with approval in *Weil* v. *Waterhouse, supra; Heller* v. *Dailey, supra,* at p. 569; *Carp & Co.* v. *Meyer, supra,* at p. 493; *Paxton Realty Corp.* v. *Peaker, supra,* at p. 491; *Miller Jewelry Co.* v. *Dickson, supra,* at p. 687. Also see 18 A. L. R. 960 III (a) 1. Liability of Tenant, and 58 A. L. R. 906.

We point out that no Indiana case has been cited dealing with clause of this exact nature; nor have we found Indiana authority specifically construing the effect of such a clause where there is a surrender and acceptance of a lease, either express or by operation of law. However, we have discovered one case which indicates what we believe is a correct approach to this problem.

In the factual situation in *Carp, supra,* at p. 491, there is a type of savings clause providing that if the premises is

vacated or if lessee's business is discontinued, the lessor has the

". . . right to terminate the lease by a thirty-day notice served personally or by registered mail on lessee, or the lessor, at his option, might relet the demised premises as the agent of the lessee, the rent received therefor to be applied, first, to payment of expenses incurred in reletting, then to payment of rent due to the lessor under the lease to appellant, balance to be retained for account of appellant."

While citing the rule of the *Donahoe* case, *supra,* the court held that a judgment for an amount of rent *to the time a second tenant took possession,* although within the term of the original lease, was a valid judgment and within the evidence. Thus, the court in the *Carp* case, *supra,* evidently treated the "savings clause" as ineffectual after the acceptance of the surrender by the landlord, which occurred when he re-leased the property.

In *Siller* v. *Dunn* (1930), 103 Cal. App. 154, 284 P. 232, 110 A. L. R. 375, we find a factual situation quite similar to the instant case. In that case the lessor re-entered within the term of the lease and remodeled the premises *making it untenantable for the purpose that it had originally been leased.* There was a clause which provided for the collection of rent for the rest of the term from the lessee if the lessee surrendered the premises during the term. The court stated that: ". . . notwithstanding the clause in the lease which we have quoted, the plaintiff (lessor) abandoned the lease and by his actions is now estopped to maintain this action." Further, the court noted that estoppel may occur contrary to the actual intent; and is inferred from the acts of the parties.

This court has recognized that a clause in a lease for the benefit of one of the parties to such contract, may be waived by that party. *Miller* v. *Ready* (1915), 59 Ind. App. 195, 204, 108 N. E. 605. It is obvious that the above-mentioned "savings clause" is a clause for the benefit of the lessor and thus may be waived by said lessor.

Although by principles of estoppel or waiver, the lessor may be denied from asserting the above covenant, we need not utilize these principles in our determination in this case. We simply hold that by lessor's own acts of acceptance, after surrender by lessee, lessor has terminated the lease, and because the lease is terminated, all of the covenants, including the covenant allowing the collection of accrued rent for the residue of the term, are thereby abrogated. Therefore, appellee-guarantor was released from liability on the lease under the covenants as of the date of termination.

Appellant-lessor also asserts that the trial court erred in not assessing damages for the 1955 taxes. A covenant in the lease provided that the "Lessee shall pay *before they become delinquent* all state, county and city real estate or personal property taxes levied against the real estate . . ."

In view of our holding that lessee and the guarantor were released from all of the covenants of the lease on March 13, 1956, guarantor was thus released from the above covenant on that date; and, since the taxes were not delinquent until the first Monday in May, 1956 as to a first installment, Acts 1935, ch. 166, § 1, p. 824 being § 64-2015, Burns' 1961 Replacement, appellee could not be liable under the covenant to pay taxes.

There is even more reason for denying damages to appellant herein. Appellant relied upon the "savings clause" quoted above as a partial basis for liability and damages. The clause is clear in stating that lessee would be liable for *loss of rent* that lessor may incur. The trial court stated in its special finding of fact No. 17:

"17. That by its voluntary act of making said sale the plaintiff made it impossible and impracticable to determine whether the plaintiff incurred any damages during the residue of the stated term of said lease by reason of loss of rent during such period following March 13, 1956; and there is insufficient evidence in the record of this cause to enable the Court to fix any damages accruing to the plaintiff from and after the date of March 13, 1956, even if plaintiff were entitled to damages for said period."

After selling practically all of the factory equipment from the premises, lessor unilaterally changed the amount of rent demanded, and appellant now claims this new amount as his damages. Appellant did not present in evidence a workable formula for the court to determine damages for the rent due on the rest of the term, if damages could have been awarded. Therefore, the trial court was correct in holding against appellant for another reason; that is, to award damages, the judge would have had to base his award on conjecture, and this the trial court may not do. *Snyder* v. *Stanley* (1922), 77 Ind. App. 253, 257, 133 N. E. 512.

Moreover, under the terms of the "savings clause," the lessor, to recover any damages, was required to prove that it exercised reasonable diligence in re-letting the premises, it being allowed under that provision the right to recover the difference between the rent received after such proof of reasonable diligence in re-letting and the contract rental. *Waffle* v. *Ireland* (1927), 86 Ind. App. 119, 155 N. E. 513. In that case, at p. 122, the court said:

> "Under the law governing cases of this character, the burden of proof is on the appellee (lessor) to prove due diligence in reletting in order to relieve the appellant (lessee) of such liability as he could and save him harmless so far as he could by using due diligence and care in renting to a responsible party and for such an amount as he could reasonably obtain."

In the instant case, the trial court's finding No. 17 indicates that appellant has failed to meet the burden of proof as required by the *Waffle* case, *supra,* and the appellant has failed to demonstrate in his brief that reasonable diligence was used in re-letting the premises.

Appellant also asserts that the trial court erred in excluding evidence of admission of alleged independent facts by appellee made during a conversation of compromise. Appellant admits that the evidence excluded was a series of statements by

appellee during a meeting called for the purpose of settling any liability that appellee might have.

The following statements were made which were not admitted, and which appellant argues should have been admitted by the trial court.

"Q. 551. 'In addition to the taxes, was anything else discussed in respect to what you owed?

Mr. Link: This witness if permitted to answer this question would answer 'yes.'

Q. 552. What were these items?

Mr. Link: This witness if permitted to answer this question would answer "There was some liability on monthly rent."

Q. 553. For what period?

Mr. Link: This witness if permitted to answer this question would answer 'Well, within the date of the last rental payment by Pal Products up until this time.' "

Appellant agrees that other offers of proof from the meeting sought to be admitted continue along the lines of negotiating a figure for a settlement of the various elements of the controversy.

The general rule as to the competency of evidence of an admission stated in the course of a compromise is found in *Nat. Life, etc., Ins. Co.* v. *Williams* (1925), 84 Ind. App. 343, 349, 138 N. E. 826.

". . . 'an offer, concession or admission, made in the course of an ineffectual treaty of compromise, and constituting, in itself, the point yielded for the sake of peace, and not because it was just or true, is not competent evidence against the party making it; but the law is otherwise with regard to an independent fact admitted to be true, but not constituting such yielded point.' *Kintz* v. *R. J. Menz Lumber Co.* (1911), 47 Ind. App. 475; *Louisville, etc., R. Co.* v. *Wright* (1888), 115 Ind. 378, 7 Am. St. 432."

Obviously, the reason for the rule is that the law favors compromises out of court, and a party to a controversy should not be prejudiced when yielding certain points to effectuate the compromise if his efforts should fail.

It is admitted by appellant that the above admission was made in the course of an ineffectual compromise, and we cannot say as a matter of law that the above statements were not yielded for "the sake of peace." The meeting was called for the express purpose of compromising the parties' differences on damages possibly owed by appellee. Various figures were discussed and rejected by the parties; figures for taxes, rent and other alleged damages. The statement made by appellee as to rent owed, in its context, indicates that it was made along with the other items discussed, in an effort to arrive at an agreeable figure. To hold appellee to this statement as to liability would weaken the advancement of the policy of compromises out of court. Also, note that appellee stated that there was some liability to the date of the compromise conversation. This is not an unequivocal statement of an independent fact which is within the exception to the general rule.

Further reason for our holding on this question can be seen by reference to the question and answer following the offer of proof that appellant states in his brief, which is as follows:

"Q. 554. Do you know what the date of the last rental payment by Pal Products was?
A. I am refreshing my recollection by referring to a copy of a letter, February 27th, from Northern Indiana Steel Supply Company addressed to Pal Products, Inc. which states that Pal Products, Inc. failed to pay the monthly installment on rent due January 19, 1956, which would indicate the last payment was made December 19, 1955."

Appellant admits that the rent was paid *to* March 19, 1956. Therefore, appellee at the time he made the statement was laboring under the wrong assumption that the rent was paid *only to January 19, 1956*. Thus, there was *some* liability for rent under appellee's thinking at the time of the compromise meeting because the obligations on the lease did not cease until March 13, 1956. Therefore, conceding for the purpose of argument that appellee's statement could be admissable, its exclusion was not harmful to appellant because

such excluded evidence would not be beneficial to him. Therefore, the exclusion of the alleged admission could not be prejudicial and no error was committed by the trial court in not allowing the admission of the above evidence. *Indianapolis Traction, etc., Co.* v. *Rowe* (1908), 43 Ind. App. 407, 87 N. E. 653.

For all of the foregoing reasons, the judgment of the trial court should be affirmed.

*Affirmed.*

Bierly, P. J. and Smith, J., concur. Mote, J., concurs in result.

NOTE.—Reported in 204 N. E. 2d 668.