T. BROOKS BRADEMAS *v.* REAL ESTATE DEVELOPMENT CO.

[No. 3-1175A259. Filed December 29, 1977.]

*F. Richard Kramer, Joseph V. Simeri, Kramer, Rowe, Sweeney, Butler, Simeri & Laderer*, of South Bend, for appellant.

*Thomas P. Loughlin, William T. Means*, of Mishawaka, for appellee.

STATON, P.J.—Real Estate Development Company ("the company") filed suit to recover funds paid allegedly by mistake to T. Brooks Brademas. Brademas and his wife filed a counterclaim seeking specific performance of a contract for the sale of real estate. The trial court granted the company a judgment against Brademas, entered an award of punitive damages in the sum of $2,500 against Brademas, and denied the request for specific performance. In his appeal to this court, Brademas raises the following issues:

(1)  Did the trial court err in awarding punitive damages?

(2)  Was evidence of offers of compromise properly admitted?

(3)  Was testimony concerning a contract to which Brademas was not a party properly admitted?

(4)  Did the trial court err in denying specific performance?

We affirm.

### I.

### Punitive Damages

The evidence most favorable to the trial court's judgment shows that in October of 1970, the company and Brademas entered into a trust agreement governing the sale of approximately 33 acres of

land. The total purchase price of $132,940.00 was to be paid in installments and, as the installments were paid, the company was to receive title to parcels of the 33 acres. The company made payments in excess of $80,000 and, accordingly, received title to 19 acres of land. The company then entered into a contract with Lillian Pianowski for the purchase of certain real estate contiguous to that which the company had already purchased from Brademas. Shortly thereafter, in late 1972, the company defaulted on its agreement with Brademas.

In April of 1973, the company's bookkeeping employees prepared a check in the exact amount called for by the Pianowski contract. By mistake, the check was made out to the order of Brademas and mailed to him. A cover letter sent with the check stated that the check was for the Pianowski property and indicated precisely the amount owing on the Pianowski contract. The check stub also indicated that the check was for the first installment on the Pianowski property. Nevertheless, Brademas endorsed and negotiated the check.

As soon as the error was discovered by the company it contacted Brademas, explained the error, and requested a return of the funds. Brademas refused to return the money and, in a conversation with the company's lawyer, stated: "... (B)efore I send that money back, there is going to have to be some things straightened out ... We've got no way in or out of that property[1] and I want to get the matter of easements for water, for ingress and egress straightened out before we send that money back." Brademas subsequently prepared a form of easement grant and tendered the form, along with a check for $1.00 to the company.

The trial court found that the company had made out and sent the check to Brademas by mistake and was, therefore, entitled to have the proceeds refunded. Additionally, the trial court, after finding that Brademas acted oppressively, maliciously, and with a heedless disregard of the consequences, assessed punitive damages in the sum of $2,500. Brademas contends, in effect, that the trial court's findings are not support by the evidence.

---

1. The 13 acres upon which the company had defaulted.

Punitive damages are allowed where malice, fraud, oppression, gross negligence, or willful and wanton misconduct are shown. *Jeffersonville Silgas, Inc. v. Wilson* (1972), 154 Ind. App. 398, 290 N.E.2d 113. When, as in the instant case, a trial court makes findings of fact concerning the presence of those elements, the findings will not be set aside unless they are clearly erroneous. Ind. Rules of Procedure, Trial Rule 52. Here, the record supports a finding that Brademas oppressively and maliciously used the funds obtained by way of the mistaken payment as leverage in an attempt to secure the easements at a minimal price. Punitive damages were properly awarded.

## II.

### Offers of Compromise

Brademas' next contention is that the trial court erred in allowing testimony concerning his efforts to obtain the easements. Brademas refers to these efforts as "offers of compromise" and cites *Northern Indiana Steel Supply Company v. Chrisman* (1965), 139 Ind. App. 27, 204 N.E.2d 668, in support of his contention that such evidence should have been excluded.

The rationale for the general rule excluding evidence of offers of compromise is that the law favors out of court compromises and that a party who yields certain points in an effort to effectuate such a compromise should not be prejudiced if those efforts fail. *Northern Indiana Steel Supply Company, supra.* While the law does favor out of court compromises, the law does not favor oppressive or malicious conduct. The rule enunciated in *Northern Indiana Steel Supply Company,* therefore, is not applicable to those situations where the offers of compromise are allegedly oppressive and malicious and the subject of a suit for punitive damages. The testimony was properly allowed.

## III.

### Comparison With Another Contract

Brademas also contends that the trial court erred in allowing testimony concering differences between the Pianowski contract

and the Brademas contract. The testimony in question reads as follows:

"I am reading from the Pianowski agreement:

'All conveyances shall be of contiguous land' — and at this point there is a period in the Brademas agreement, whereas in the Pianowski agreement it goes on to say: 'in a full East-West or North-South direction so that at no time shall Seller be left with any landlocked and unusable ground. Buyer further agrees that within six months after Buyer completes its acquisition of said real estate, Buyer will open Catalpa Street (Drive) through and to that portion of land owned by Seller which land would otherwise be landlocked, said land being located adjacent to and east of that parcel described as Parcel 'C' on Exhibit 'B', attached hereto and made a part hereof."

Although the relevance of this particular testimony is questionable, Brademas has failed to show how he was prejudiced by its admission. This Court will not reverse a judgment for an error concerning the admission of evidence unless there is a showing by the party opposing such evidence that he was prejudiced thereby. *Marsh v. Lesh* (1975), 164 Ind. App. 90, 326 N.E.2d 626.

## IV.

### Specific Performance

The trust agreement entered into by Brademas and the company contains the following provisions:

"In the event that Buyer shall default in any payment or payments required to be made to the Trustee provided for herein after a grace period of twenty (20) days, the Seller or their assigns shall have the following options:

(a) to cancel and rescind this agreement and to receive from the Trustee the balance of the property held in trust; or

(b) to waive the default but waiver of any one default by Seller shall not constitute a waiver of any future defaults."

The trial court concluded that the parties intended the two enumerated options to be the exclusive remedies available to Brademas upon the company's default. The court also concluded that, since the remedy of specific performance is not consistent

with either of the remedies listed in the agreement, specific performance was not available to Brademas. Brademas contends that the right to waive a default is meaningless unless it carries with it the ability to seek specific performance.

We agree with the trial court's conclusions. The trust agreement is clear and unambiguous in providing Brademas a choice of two remedies. The first allows Brademas to cancel the agreement, retain all monies previously paid pursuant to the contract, and receive back the remaining property held in trust. The second remedy gives Brademas the option of disregarding the company's default and *allowing* the company to continue under the agreement. It does not give Brademas the option of *requiring* the company to perform under the agreement. We must leave to individual parties the right to make the terms of their agreements as they deem fit and proper, so long as those terms are lawful. *Prudential Insurance Co. of America v. Lancaster* (1966), 139 Ind. App. 292, 219 N.E.2d 607. Specific performance was properly denied.[2]

The judgment of the trial court is affirmed.

Hoffman, J. and Lowdermilk, J., (By designation), concur.

NOTE — Reported at 370 N.E.2d 997.

---

2.   A second reason given by the trial court for denying specific performance was that Brademas had come into court with unclean hands. Since we have already concluded that the trial court's decision can be affirmed on other grounds, we need not discuss the issue of unclean hands. *Daugherty v. Daugherty* (1947), 118 Ind. App. 141, 75 N.E.2d 427.