Susan NYLEN, Elizabeth J. Lewis, Julie Reed, Lucy J. Reed, Ronald Nylen, and Boyd Lewis, Appellants, (Defendants Below)

v.

**PARK DORAL APARTMENTS,**
Appellee. (Plaintiff Below)

No. 53A04–8803–CV–89.

Court of Appeals of Indiana,
Third District.

March 20, 1989.

---

John M. Irvine, Bloomington, for appellants.

Barbara A. Nardi, Baker, Barnhart, Baker, Nardi & Sturgeon, Bloomington, for appellee.

HOFFMAN, Judge.

Susan Nylen, Elizabeth Lewis, Julie Reed, Lucy Reed, Ronald Nylen and Boyd Lewis, the defendants-appellants, appeal from a trial court decision for Park Doral Apartments, the plaintiff-appellee, in a suit for ejectment and damages. After hearings on the issues of eviction and damages, the trial court ordered ejectment and the payment of delinquent rent, future rent, late fees, attorney fees and consequential damages. The appellants contend that the trial court's judgment is contrary to law.

The facts relevant to this appeal may be summarized as follows. Susan Nylen, Elizabeth Lewis and Julie Reed, students at Indiana University, executed a Rental Agreement with Park Doral Apartments for a term from August 26, 1986 until August 19, 1987. Performance of the lease was secured by a deposit in the amount of $420.00, constituting pre-payment of rent for the last month of the lease term, and by the signatures of Ronald Nylen, Boyd Lewis and Lucy Reed as co-signers.

At the end of the fall semester, Julie Reed moved out of the apartment and in February of 1987, she refused to pay any further rent. Susan Nylen and Elizabeth Lewis remained in possession of the apartment, paying only two-thirds of the total rent due for the month of February. Park Doral Apartments filed suit for ejectment of the tenants for failure to pay rent in full for the month of February.

While the ejectment proceedings were pending, Susan Nylen and Elizabeth Lewis made a payment of $280.00 for the rent due in March. Subsequently, on March 10, 1987, the trial court ordered Nylen and Lewis to pay full rent or vacate the premises. They vacated the apartment, pursuant to court order, on March 13, 1987.

A final hearing on the issue of damages was held on September 14, 1987. The trial court awarded delinquent rent owed plus the balance of rent due under the lease from the time of Nylen and Lewis' eviction. The delinquent portion of the rent was $140.00 per month for February and March, and the balance for the remainder of the lease was $420.00 per month for April through July. The court also awarded $362.00 in late fees, $600.00 in attorney fees and $75.24 in consequential damages. Total relief awarded by the court, set off by the $420.00 security deposit, was $2,577.24 plus the costs of the action.

The issues raised on appeal challenge that portion of the trial court's judgment awarding damages to Park Doral Apartments:

(1) whether the trial court's award of future rents is contrary to law, because eviction terminated the lease and abrogated all contractual obligations under the lease;

(2) whether the trial court's judgment is contrary to law, because the court permitted Park Doral Apartments to pursue inconsistent remedies of eviction and recovery of post-ejectment rents;

(3) whether the trial court's award of future rents is contrary to law, because it violates the doctrine of mitigation of damages;

(4) whether the trial court's award of late fees is contrary to law, because such fees are punitive in nature and therefore unenforceable; and

(5) whether the trial court's judgment is contrary to law, because the lease is unconscionable and therefore unenforceable.

When a judgment is attacked as being contrary to law, the reviewing court may neither weigh the evidence nor assess the credibility of witnesses. The court on ap-

peal may consider only the evidence most favorable to the judgment and all reasonable inferences to be drawn from that evidence. *Blankenship v. Huesman* (1977), 173 Ind.App. 98, 100, 362 N.E.2d 850, 852. It is only where the evidence and inferences so considered lead to but one conclusion, and the trial court has reached a contrary conclusion, that the judgment will be disturbed as being contrary to law. *T & W Bldg. v. Merrillville Sport & Fitness* (1988), Ind.App., 529 N.E.2d 865, 866.

█ Mindful of the appropriate standard of review, this Court will consider first the appellants' argument that an award of future rents is contrary to law. According to the appellants, eviction served to abrogate all covenants in the Rental Agreement, including the savings clause set out in Paragraph 3 of the lease:

"3 ... Eviction of tenant for a breach of lease agreement shall not release tenant from liability for rent payment for the balance of the term of the lease."

The appellants maintain that termination of the lease by an order of ejectment terminated their liability for rents accruing in the future.

It is a general rule that a tenant will be relieved of any obligation to pay further rent if the landlord deprives the tenant of possession and beneficial use and enjoyment of any part of the demised premises by an actual eviction.

18 I.L.E. *Landlord and Tenant* § 285 (1959);

*see also Sigsbee v. Swathwood* (1981), Ind.App., 419 N.E.2d 789, 794.

However, an exception to the general rule exists when the lease includes a savings clause expressly providing that termination shall not affect the accrual of liability for rent.

18 I.L.E. *Landlord and Tenant* § 288 (1959);

52 C.J.S. *Landlord and Tenant* § 490 (1968);

49 Am.Jur.2d *Landlord and Tenant* § 1013 (1970).

The appellants suggest that such an exception is not recognized in Indiana.

To support their position, the appellants rely in part on *Carp & Co. v. Meyer* (1929), 89 Ind.App. 490, 167 N.E. 151. That case involved an alleged acceptance by the landlord of the tenant's surrender of the leased premises. The landlord argued against the theory of surrender and acceptance by emphasizing a provision in the lease which authorized the landlord to re-let the premises as the agent of the tenant, while holding the tenant liable for any deficiency in the rent.

The court in *Carp* held that a verdict of $2,875.00 was well within the evidence as to the amount of rent which the landlord was entitled to recover from the tenant. 89 Ind.App. at 493, 167 N.E. at 152. The court did not express whether its holding was based on a finding of surrender and acceptance. In fact, subsequent courts have disagreed as to the rationale for the decision in *Carp*. *Compare Grueninger Travel, etc. v. Lake Cty. Trust* (1980), Ind. App., 413 N.E.2d 1034 (*Carp* court must have concluded that there was no evidence of acceptance of the tenant's attempted surrender) *with No. Ind. Steel Sup. Co., Inc. v. Chrisman* (1965), 139 Ind.App. 27, 204 N.E.2d 668 (*Carp* court apparently concluded that landlord accepted tenant's surrender when landlord re-leased premises to another).

There is no discussion in *Carp* concerning the provision in the lease which permitted the landlord to re-let the property as the tenant's agent without terminating the tenant's liability. Certainly, *Carp* cannot be viewed as a decision which invalidates savings clauses, as the appellants suggest.

The appellants also base their argument against the enforceability of savings clauses on *No. Ind. Steel Sup. Co., Inc. v. Chrisman* (1965), 139 Ind.App. 27, 204 N.E.2d 668. The savings clause at issue in that case stated:

"If the lessee shall neglect or fail to make any of the payments of the rent, or any part thereof, within ten (10) days after the same become due, or if the lessee shall neglect or fail to perform or observe any of the covenants ... the lessor may lawfully enter into and upon the said premises or any part thereon in the name of the whole, and repossess the same ... and upon entry as aforesaid,

this lease shall terminate ... and the lessee covenants that in case of such termination, it will indemnify the lessor against all loss of rent which the lessor may incur by reason of such termination during the residue of the term above specified...."

*Id.* at 36–37, 204 N.E.2d at 673.

The lessor argued for enforcement of the savings clause to support its claim for rent following its repossession of the leased premises.

Yet the facts disclosed that there was no default by the lessee. The lessee had made all monthly rental payments due under the lease to and including March 18, 1956. Nonetheless, on February 27, 1956, the lessor made a written demand for repossession of the property. Upon repossession, the lessor sold and removed all equipment and furnishings from the property, reducing the premises to an empty building.

There was no evidence that the lessor had acted within the scope of the savings clause which the lessor later sought to enforce. Accordingly, the *Northern* court held that the savings clause did not survive a termination of the lease brought about by the lessor's own actions. *Id.* at 39, 204 N.E.2d at 674. The appellants urge this Court to conclude that a savings provision never survives termination of a lease. This Court cannot agree to such a broad reading of the decision in *Nor. Ind. Steel Sup. Co., Inc. v. Chrisman.*

Contrary to the appellants' contention, there is case law in Indiana recognizing and enforcing savings clauses. In *Grueninger Travel, etc. v. Lake Cty. Trust* (1980), Ind.App., 413 N.E.2d 1034, the court upheld a lease provision which authorized the landlord to re-enter and re-let the leased premises without terminating the original tenant's liability. *Id.* at 1043. The court stated that it is neither illegal nor improper to include in a lease agreement a provision that the obligation of the tenant to pay all the rent to the end of the term shall remain, notwithstanding there has been a re-entry for default. *Id.* at 1042. The *Grueninger* court indicated that a savings clause may also preserve the lessee's

liability for future rent when the lessor resumes possession for its own purpose, although such conduct is generally presumed to have worked a surrender by operation of law. *Id.* at 1045.

Based upon the guidance offered in *Grueninger*, this Court finds that the savings clause in the Rental Agreement between the appellants and Park Doral Apartments is valid and enforceable. It is entirely consistent with existing Indiana case law to uphold a lease provision which states that the lessee's liability for rent for the balance of the lease term will continue, notwithstanding an order of eviction. Moreover, the weight of extra-jurisdictional authority supports the enforcement of such savings clauses.

*See, e.g., International Publications v. Matchabelli* (1933), 260 N.Y. 451, 184 N.E. 51;

*Klein v. Ickovitz* (1970), 121 Ill.App.2d 191, 257 N.E.2d 187;

*The Grolier Society Inc. v. International Realty Co.* (1971), Colo Ct.App., 482 P.2d 394;

*Chinese Hospital Foundation Fund v. Patterson* (1969), 1 Cal.App.3d 627, 81 Cal.Reptr. 795.

Therefore, this Court concludes that the award of future rents based on Paragraph 3 of the Rental Agreement was not contrary to law.

■ The second issue raised on appeal concerns whether the lower court erroneously permitted Park Doral Apartments to pursue inconsistent remedies.

"The test of such inconsistency of remedies has its basis in the factual background which constitutes the cause of action. If the assertion of one cause of action involves the repudiation of another, then the modes of redress are inconsistent. If the one cause of action admits a state of facts, and the other denies the same facts, the remedies sought by such actions are inconsistent."

*Kimmel v. Captain* (1940), 107 Ind.App. 621, 626, 24 N.E.2d 435, 437.

According to the appellants, Park Doral Apartments could not seek both an order of

ejectment and recovery of rent for the balance of the lease term. The appellants maintain that the suit for ejectment brought by Park Doral Apartments operated as a denial of the Rental Agreement, thereby barring recovery under the savings clause of the lease. That argument reflects a basic misunderstanding as to the nature of a suit for ejectment.

 Ejectment is the appropriate means of recovering possession of leased premises from a tenant for non-payment of rent or forfeiture of the lease by a breach of its conditions, where the lease stipulates or the law provides that the landlord may re-enter for such non-payment or breach. *Adams v. Holcomb* (1948), 226 Ind. 67, 73, 77 N.E.2d 891, 893. A suit for ejectment does not constitute a denial that a lease agreement exists, but it is a means of enforcing the lease. Thus the ejectment action brought by Park Doral Apartments did not preclude recovery of future rents under the savings clause. Because the remedies of ejectment and recovery of post-ejectment rents are consistent, the trial court properly allowed concurrent pursuit of those remedies. *See* 28 C.J.S. *Election of Remedies* § 3b (1941) (where remedies are concurrent and consistent, a party may pursue one or all of such remedies until satisfaction is had).

 For their third allegation of error, the appellants suggest that the lower court's judgment violates the doctrine of mitigation of damages. The appellants first argue that they were discharged from liability for post-ejectment losses, because the evidence disclosed an exacerbation rather than mitigation of damages. The appellants reason that there was a failure to mitigate damages when Park Doral Apartments sought to evict Susan Nylen and Elizabeth Lewis, instead of permitting them to continue in possession while paying only two-thirds of the rent due per month. There is no authority for the proposition that a landlord must tolerate a breach of lease terms in order to mitigate its damages, and this Court declines to endorse such a premise.

In the alternative, the appellants aver that enforcement of a savings clause in a lease subverts the doctrine of mitigation of damages. This Court cannot reach such a conclusion.

 The doctrine of mitigation of damages creates an obligation on the part of the landlord to use such diligence as would be exercised by a reasonably prudent man under similar circumstances to re-let the premises, if possible, in order to mitigate damages resulting from the tenant's breach of lease. *State v. Boyle* (1976), 168 Ind.App. 643, 646, 344 N.E.2d 302, 304. The obligation exists even if there is no mandatory re-letting clause in the lease. *See Hirsch et al. v. Merchants Nat'l Bk.* (1975), 166 Ind.App. 497, 336 N.E.2d 833. Further, courts have recognized and enforced the doctrine of mitigation of damages while at the same time sustaining savings clauses. *Id.; see also Grueninger, supra,* 413 N.E.2d 1034.

 In the instant case, there was evidence before the trial court that Park Doral Apartments used due diligence to re-let the premises. The manager of the apartments had placed a series of advertisements in the Indiana Daily Student newspaper. In response to the advertisements, three persons came to view the apartment. Subsequently, the manager reduced the monthly rental rate in an effort to find a tenant. Considering the evidence most favorable to the judgment, this Court holds that the award of future rents based on a savings clause was not contrary to law as a violation of the doctrine of mitigation of damages.

In a related argument, the appellants suggest that enforcement of the savings clause worked a forfeiture which cannot be permitted according to the analysis offered in *Skendzel et al. v. Marshall et al.* (1973), 261 Ind. 226, 301 N.E.2d 641. This Court has previously expressed its reluctance to extend *Skendzel* to cases which do not involve purchase equity. *See Lafayette Expo Center, Inc. v. Owens* (1988), Ind. App., 531 N.E.2d 508.

■ The appellants next challenge the trial court's award of late fees to Park Doral Apartments. That award was based on a provision of the Rental Agreement which stated:

> "2. The tenant(s) understands and agrees that the rent will be due and payable on the 1st day of each month at the designated address and should said rent not have been paid by the 1st day of the month, the landlord reserves the right to require a $2.00 per day, per person late fee...."

■ The appellants characterize Paragraph 2 of the lease as a penalty, while Park Doral Apartments maintains that the paragraph is a liquidated damages provision. In determining whether a stipulated sum payable on breach of a contract constitutes liquidated damages or a penalty, the facts, the intention of the parties and the reasonableness of the stipulation under the circumstances of the case are all to be considered. *Melfi v. Griscer Ind., Inc.* (1967), 141 Ind.App. 607, 611, 231 N.E.2d 54, 57. Where the nature of the agreement is such that a breach would result in damages which are uncertain and difficult to prove, and where the stipulated sum payable on breach is not greatly disproportionate to the loss likely to occur, then that fixed sum will be accepted as liquidated damages and not as a penalty. *Harris v. Primus* (1983), Ind.App., 450 N.E.2d 80, 83

The evidence before the lower court showed that the damages incurred by Park Doral Apartments for late rent were dependent upon several variables: the number of tenants in an apartment, each tenant's share of the rent, the ability to locate the breaching tenant and the lateness of the particular share of rent. According to the manager of the apartments, a tenant's failure to pay rent on time created extra work for the management in sending notices, preparing a weekly rent delinquency report, calling the tenant and using and preparing additional cash journals. There was also testimony concerning loss of interest income when rental payments are delinquent.

■ The question whether a contractual provision stipulating damages in the event of a breach is a valid liquidated damages clause or a penalty is purely a question of law for the court. *Mandle v. Owens* (1975), 164 Ind.App. 607, 610–611, 330 N.E.2d 362, 364. The trial court's determination that Paragraph 2 of the Rental Agreement is an enforceable liquidated damages provision cannot be deemed to be contrary to law.

The appellants argue in the alternative that the fees for late payments could not extend beyond the time of the appellants' ejectment. By operation of the savings clause in the Rental Agreement, the appellants' liability for rent was preserved for the balance of the lease term. Because the appellants continued to be liable for rental payments, the trial court properly awarded late fees for the balance of the lease term.

The last issue raised on appeal challenges the trial court's judgment as contrary to law on the ground that the lease was unconscionable. The appellants base their averment of unconscionability on *Weaver v. American Oil Co.* (1971), 257 Ind. 458, 276 N.E.2d 144.

■ In *Weaver*, the Supreme Court decided that a hold harmless clause in a service station lease was unconscionable and unenforceable. *Id.* at 465, 276 N.E.2d at 148. A careful reading of *Weaver* indicates that a contract may be declared unenforceable due to unconscionability when there is a great disparity in bargaining power which leads the party with the lesser power to sign a contract unwillingly and unaware of its terms. In addition, the contract must be one that no sensible person not under delusion, duress or in distress would make, and one that no honest and fair person would accept. *Id. See also Dan Purvis Drugs, Inc. v. Aetna Life Ins.* (1980), Ind.App., 412 N.E.2d 129, 131.

■ While there was a disparity in bargaining power between Park Doral Apartments and the appellants, it cannot be said that this disparity led the appellants to sign the lease unwillingly and unaware of its terms. Appellants Susan Nylen and Elizabeth Lewis testified that they were given an opportunity to read and did in fact read

the Rental Agreement. Nylen and Lewis asked questions of the manager concerning the lease, although neither girl objected to or sought modification of the lease terms. Nylen conceded that at the time she originally read the lease, she could have understood the savings clause. Hence the circumstances under which the Rental Agreement was negotiated and signed were unlike the circumstances condemned by the *Weaver* court. *See Houin v. Bremen State Bank* (1986), Ind.App., 495 N.E.2d 753 (guarantor was not led to sign guaranty unwillingly or unaware of its terms).

▮ The appellants stress that the Rental Agreement was a standarized form contract that strongly favored Park Doral Apartments, and they suggest that such characteristics are evidence of substantive unconscionability. Contracts are not unenforceable simply because one party enjoys an advantage over the other. *Id.* at 758. The fact that the Rental Agreement contained terms favorable to Park Doral Apartments did not render the lease unconscionable. The Rental Agreement cannot be defined as one " 'such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept.' " *Weaver, supra,* 257 Ind. at 462, 276 N.E.2d at 146. The trial court's judgment sustaining the terms of the lease was not contrary to law.

▮ Park Doral Apartments contends that it is entitled to appellate attorney fees, based upon Paragraph 3 of the Rental Agreement. That paragraph states in pertinent part:

"3. If the tenant(s) defaults in the performance of any of the covenants of this lease agreement and by reason thereof the Landlord employs the services of an attorney to enforce performance of the covenants by the tenant, to evict the tenant, to collect monies due from the tenant, or to perform any service based upon default, then, in any of said events the tenant does agree to pay a reasonable attorney's fee and all expenses and costs incurred by the landlord pertaining thereto...."

Traditionally, courts in Indiana declined to award appellate attorney fees based upon contractual provisions requiring the payment of such fees. The reason for denial was that the provision authorizing the award of attorney fees was deemed to have been merged into the judgment. Thus the contractual authorization no longer existed. *See, e.g., McCormick v. Falls City Bank* (7th Cir.1892), 57 F. 107.

Recently, Indiana courts have excepted appellate attorney fees from the general rule of merger.

> *See Seibert v. Mock* (1987), Ind.App. 510 N.E.2d 1373;
>
> *Radio Distributing v. Nat. Bank & Trust Co.* (1986), Ind.App., 489 N.E.2d 642, (Hoffman, J., dissenting to award of appellate attorney fees).

The doctrine of merger no longer precludes an award of appellate attorney fees.

The appellants seek to limit the recent trend of awarding appellate attorney fees to cases involving parties with equal bargaining power. When there is disparity in bargaining power, the appellants reason that an award of appellate attorney fees would have a chilling effect on future appeals taken by individual tenants. This Court is not persuaded that disparity in bargaining power necessitates a departure from precedent allowing the recovery of reasonable attorney fees incurred in defending an appeal.

▮ Therefore, Park Doral Apartments may recover appellate attorney fees. The preferred procedure, however, is for the trial court to hear the evidence and determine a reasonable fee when the appeal has been concluded.

> *Radio Distributing, supra,* 489 N.E.2d 650;
>
> *Templeton v. Sam Klain & Son, Inc.* (1981), Ind., 425 N.E.2d 89.

At that time, Park Doral Apartments may properly present its position concerning what constitutes a reasonable fee.

Accordingly, the judgment of the trial court is affirmed, but the case is remanded for a hearing on appellate attorney fees.

STATON and NEAL, JJ., concur.