**Kenneth W. GIGAX, Elizabeth E. Gigax, Appellants–Defendants,**

v.

**The BOONE VILLAGE LIMITED PARTNERSHIP, Appellee– Plaintiff.**

No. 49A04–9505–CV–183.

Court of Appeals of Indiana.

Oct. 24, 1995.

Alan H. Lobley, Bradley L. Williams, Ice Miller Donadio & Ryan, Indianapolis, for Appellants.

John S. (Jay) Mercer, William T. Niemier, Wood Tuohy Gleason Mercer & Herrin, Indianapolis, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendants–Appellants Kenneth W. and Elizabeth E. Gigax (hereinafter, referred to collectively as "Gigax") appeal a judgment in favor of Plaintiff–Appellee Boone Village Limited Partnership (hereinafter, "Boone Village").

We reverse and remand.

### ISSUES

Gigax raises three issues for our review, which we consolidate and restate as:

 1. Whether the trial court erred in awarding rent and other damages after termination of the lease.

 2. Whether the trial court erred in determining the date upon which the lease commenced.

### FACTS AND PROCEDURAL HISTORY

On December 12, 1991, Boone Village and Acorn on Oak, Inc. (hereinafter, "Acorn") entered into a written lease agreement whereby Boone Village agreed to lease Space 1350, a free-standing building located in the parking lot of a Zionsville shopping center, to Acorn for use as a restaurant. The stated termination date of the lease was October, 2002. At the same time the lease was executed, a document entitled "Guaranty" was executed "as an inducement" to Boone Village's entry into the lease. (R. 393). The agreement provided that each signator agreed to be primarily liable in case of default on the lease by Acorn. Gigax and others signed the agreement as guarantors.

William Rall, the president of Acorn, opened a restaurant in the leased building on January 15, 1993. On February 9, 1993, Acorn made a rent payment, the only payment Acorn ever made under the lease.

On May 27, 1993, Boone Village filed suit against Acorn and the guarantors alleging non-payment of rent. Boone Village asked that the trial court: (1) award damages for the breach; (2) terminate the lease; and (3) foreclose a security interest in inventory, personalty and fixtures on the premises. On July 2, 1993, the trial court "canceled" the lease and ordered Acorn to vacate the premises. Boone Village took possession of the premises the same month and relet the premises on March 7, 1994.

Boone Village filed a motion for summary judgment alleging that as a matter of law Acorn and the Guarantors were liable for damages resulting from the breach of the lease agreement. The trial court granted the motion and set a hearing on the issue of damages. After the hearing on damages, the trial court rendered judgment in favor of Boone Village. In its judgment, the trial court, by special findings of fact and conclusions of law, awarded damages against each of the guarantor-defendants (including Gigax), jointly and severally, in the amount of $122,805.47. Gigax now appeals on the basis that the trial court's calculation of damages is erroneous.

### DISCUSSION AND DECISION

#### STANDARD OF REVIEW

 The burden of proof with respect to damages is with the plaintiff. *Peak v. Campbell* (1991), Ind., 578 N.E.2d 360, 361. While the plaintiff need not prove the amount of damages suffered to a mathematical certainty, the award must be supported by evidence in the record. *National Advertising Co. v. Wilson Auto Parts, Inc.* (1991), Ind.App., 569 N.E.2d 997, 1001. In addition, an element of claimed damages must find support in some recognized legal theory. *See General Plating & Engineering, Inc. v. Syn Industries, Inc.* (1985), Ind.App., 472 N.E.2d 1290, 1294.

 We will not reverse the award of damages if it is sustained by the evidence presented to the trier of fact. In determining whether there is sufficient evidence to support the damages awarded, this court

may not weigh the evidence or judge the credibility of witnesses. *Southern Indiana Gas & Electric Co. v. Indiana Insurance Co.* (1978), 178 Ind.App. 505, 383 N.E.2d 387, 393–94. We will focus upon the evidence in favor of the judgment and any reasonable inferences to be drawn therefrom. *K Mart Corp. v. Beall* (1993), Ind.App., 620 N.E.2d 700, 706, *reh'g denied.* However, an award of damages may not be based upon conjecture, speculation, or guesswork. *Southern Indiana*, 383 N.E.2d at 394.

■■■ A trial court's judgment based upon special findings and conclusions will be reversed only when clearly erroneous. Ind.Trial Rule 52(A); *Monroe Financial Corp. v. DiSilvestro* (1988), Ind.App., 529 N.E.2d 379, 381, *reh'g denied, trans. denied.* A judgment is clearly erroneous if not supported by the conclusions of law. Conclusions of law are clearly erroneous if unsupported by the findings of fact. *Hvidston v. Eastridge* (1992), Ind.App., 591 N.E.2d 566, 568. Special findings are adequate only if sufficient to support a valid legal basis for the judgment. *Metropolitan Development Commission of Marion County v. Goodman* (1992), Ind., 588 N.E.2d 1281, 1285.

## I. THE VALIDITY OF THE TRIAL COURT'S JUDGMENT PERTAINING TO POST–TERMINATION RENT AND RELATED DAMAGES

■■■ The trial court's judgment included an award of $91,945.98 in rent and $5,094.84 in late fees for a period beginning December 1, 1992,[1] through June, 1994 (the month in which the property was relet). The award also included $3,702.81 in real estate taxes due through May, 1994, $3,886.64 in insurance due through June, 1994, and interest on the unpaid balance at the rate of ten percent per annum through June, 1994. Gigax contends that in determining the damages to be awarded, the trial court failed to consider the legal effect of the termination of the lease by Boone Village. Gigax argues that Boone Village elected to terminate the lease on May 27, 1993, when it filed its complaint specifical-

ly asking the trial court to "[o]rder the lease terminated" and accompanying motion to eject specifically asking the trial court to "[o]rder the lease canceled."

Paragraph 15(a) of the lease between Boone Village and Acorn provides that upon default by Acorn, Boone Village has the immediate right of re-entry. Paragraph 15(b) provides:

Should Landlord elect to re-enter, as herein provided, or should it take possession pursuant to legal proceedings or pursuant to any notice provided for by law, it may *either* terminate this Lease or it may, from time to time, without terminating this Lease, make such alterations and repairs as may be necessary in order to relet the premises or any part thereof ...

... No such re-entry or taking possession of said premises by Landlord shall be construed as an election on its part to terminate this Lease unless a written notice of such intention be given to Tenant or unless the termination thereof be decreed by a court of competent jurisdiction.

(R. 40) (Emphasis supplied). The language of Paragraph 15(b) reveals that Boone Village understood that (1) re-entry to relet and re-entry after termination are two different things; and (2) termination may be accomplished by notice to the tenant or by court ruling.

This court has held that the decision of whether a termination of a lease has occurred must be made on a case by case basis. *Grueninger Travel Service of Fort Wayne, Indiana, Inc. v. Lake County Trust Co.* (1980), Ind.App., 413 N.E.2d 1034, 1039 (holding that termination does not occur when landlord accepts keys to the premises and relets to a successor tenant); *Northern Indiana Steel Supply Co. v. Chrisman* (1965), 139 Ind.App. 27, 204 N.E.2d 668, 672, (holding that termination occurred when lessor asked for possession of property, sold all of the equipment located thereon, demanded a new rental figure without change of the

---

1. The trial court determined that the lease period commenced in November, 1992. It applied the single payment of rent to November and determined that the damages began accruing in December.

lease, and caused the property to be changed from a functioning factory to a shell).

In the present case, Boone Village terminated the lease when it gave notice of its intent to do so in the complaint filed on May 27, 1993. As discussed above, Boone Village was aware of the difference between re-entry to relet and re-entry after termination. In acknowledgment of this awareness, it carefully set out what steps would constitute a termination in Paragraph 15(b). The complaint asking for termination and the motion of ejectment asking for cancellation served upon Acorn were clearly sufficient notice of Boone Village's intent to terminate the lease. The terminology of the complaint and the motion to eject were not ambiguous.

■ The general rule is that "a tenant will be relieved of any obligation to pay further rent if the landlord deprives the tenant of possession and beneficial use and enjoyment of any part of the demised premises by actual eviction." *Nylen v. Park Doral Apartments* (1989), Ind.App., 535 N.E.2d 178, 181, *trans. denied.* Stated differently, after termination *"the lease and all liability under it for future rent are extinguished."* *Chrisman,* 204 N.E.2d at 673 (quoting from *Donahoe et al. v. Rich* (1891), 2 Ind.App. 540, 28 N.E. 1001, 1003) (emphasis in *Chrisman* ). This effect is well established, however, acknowledgment of this effect is sometimes troublesome. As one commentator explained:

> [L]iability for rent continues so long as a lease is in existence ... When a lease ends, a tenant's liability for rent ends. There is nothing surprising about this when the lease runs itself out and expires by its terms. But this is also true where the lease ends before its specified expiration, because of some fault or breach by the tenant. If the lease ends by tenant's abandonment and landlord's resumption of possession, or by tenant's abandonment and landlord's reletting, or if landlord takes advantage of a conditional limitation in the lease and elects to cancel because of the tenant's default, the result is the same. The relation of landlord and tenant is an-

nulled and the end of the lease ends liability under the covenant to pay rent, but not for any liability theretofore accrued.

2 M. Friedman, *Friedman on Leases* § 16.3, at 987 (3d ed. 1990).

■ An exception to the general rule exists when the lease includes a savings clause *expressly* providing that termination shall not affect the accrual of liability for rent. *Nylen,* 535 N.E.2d at 181. In *Nylen,* the savings clause provided that, "Eviction of tenant for a breach of lease agreement shall not release tenant from liability for rent payment for the balance of the term of the lease." *Id.* We concluded that the clause was sufficiently particular to support a deviation from the general rule. In the later case of *Marshall v. Hatfield* (1994), Ind.App., 631 N.E.2d 490, *reh'g denied,* however, we reached an opposite conclusion. We found that the clause relied upon by the landlord, which stated that the landlord was permitted to "take possession of the leased premises ... or at its option, the whole rent for the entire term ... shall at once become due and payable," was not an "express provision ... dictating that termination of the lease shall not affect accrual of liability for rent." *Id.* at 493.

■ In the present case, Boone Village contends that Paragraph 15(b) of the lease contains a savings clause intended to allow recovery of post-termination rent and related damages.[2] In context, the clause relied upon states:

> Should Landlord at any time terminate this Lease for any breach, in addition to any other remedies it may have, *it may recover from Tenant all damages it may incur by reason of such breach,* reasonable attorneys' fees, and including the worth at the time of such termination of the excess, if any, of the amount of rent reserved in this Lease for the remainder of the stated term over the then reasonable rental value of the demised premises for the remainder of the stated term, all of which amounts shall be immediately due and payable from Tenant to Landlord.

2. We note that the trial court made no finding or conclusion on the efficacy of the clause. This is not surprising, as Boone Village did not assert the existence of a savings clause at trial.

(R. 40). (Emphasis supplied). Boone Village specifically asserts that "[t]he clause prior to the word "and" [highlighted above] is referred to as a 'savings clause' which supports the trial court's determination and award of damages incurred subsequent to July 2, 1993." Appellee's brief at 19.

We cannot agree that the language referring to "damages it may incur by reason of such breach" expressly provides that post-termination rent and related damages shall be recovered. We interpret the language as an intention to preserve Boone Village's rights under the common law, allowing it to recover the unpaid rent accruing before termination, plus any other damages incurred up to the date of termination. Our interpretation is bolstered by the subsequent language which specifically refers to the future rent in relation to the value of the premises[3]; the inclusion of future rent and related damages as an element of the "damages" referred to in the disputed phrase would render the subsequent language useless and reduce the whole sentence to hopeless ambiguity.

Under the lease, Boone Village had two options to take when Acorn defaulted. First, it could re-enter and relet, and subject to mitigation, could recover future rent and related damages. Second, it could terminate the lease, recover rent and related damages accruing prior to termination, and lease the premises to another party for its own benefit. Boone Village chose the second option. In so doing, it forfeited any right, absent an express provision to the contrary, to post-termination rent and related damages. The

trial court erred as a matter of law in awarding rent, late fees[4], real estate taxes[5], insurance[6], and interest[7], and utility expenses[8], accruing after the termination of the lease on May 27, 1993.

## II. THE VALIDITY OF THE TRIAL COURT'S JUDGMENT AS PERTAINING TO THE COMMENCEMENT OF THE LEASE

■ Gigax contends that the trial court erred in determining that the lease commenced on November 1, 1992. He points to Paragraph 2 of the lease as evidence of the alleged error. Paragraph 2 provides:

The term of this Lease shall be for a period of ten (10) years, commencing Nov. 1, 1992 and ending Oct. 31, 2002 except as may be hereinafter provided. Landlord shall give to Tenant written notice of the date when possession of the premises shall be given to Tenant and on which date the Leased Premises shall be ready for installation of trade fixtures by Tenant. The term of this Lease shall commence sixty (60) days after possession date or the date tenant opens for the conduct of business, whichever first occurs.

(R. 34).

Gigax notes that Boone Village presented no evidence of the notice required by Paragraph 2. He also points to testimony by Boone Village's only witness, Carol Ferson, that she did not know when possession occurred. Boone Village further points to Rall's testimony that the restaurant was opened on January 15, 1993. From Rall's evidence and the lack of evidence from Boone

3. We note that under this language, Boone Village cannot recover any future rent because the value of the premises at the time of termination exceeded the rent reserved in the lease.

4. Under Paragraph 3(d) of the lease, if rent payments were not timely paid then a late fee of $.05 for each dollar of overdue rent could be charged. The accrual of the late fee corresponds with the accrual of rent. Because no rent accrued after May 27, 1993, it follows that no late fee accrued after that date.

5. Under Paragraph 5 of the lease, Acorn was only obligated to pay "all real estate taxes ... which become due and payable during the term of the lease." (R. 36).

6. The trial court erroneously awarded the cost of the entire 1993 insurance premium and 1/2 of the 1994 premium.

7. The trial court erroneously calculated interest as if the entire amount came due at the beginning of each year. The trial court also erroneously calculated interest on rental payments accruing after termination.

8. The trial court erroneously awarded $529.05 for a telephone bill and $378.00 for a sewer bill accrued voluntarily by Boone Village after termination of the lease.

Village, Gigax concludes that the trial court erred in not finding that the lease commenced on January 15, 1993.

If Gigax's argument included an assessment of all of the evidence, we would agree that the lease commenced on the date the restaurant opened. However, Gigax's recitation of the evidence ignores Ferson's testimony that Acorn, through Rall, tendered three rental payments in the form of post-dated checks for rent due in November, 1992, December, 1992, and January, 1993. This acknowledgement of a November 1, 1992, commencement date permitted the trial court to infer that after signing the lease on December 12, 1991, Acorn took possession of the premises on a date at least sixty days prior to November 1, 1992.

## CONCLUSION

The judgment of the trial court is reversed and remanded for a calculation of damages consistent with this opinion.

Reversed and remanded.

CHEZEM and HOFFMAN, JJ., concur.