**BLAIREX LABORATORIES, INC.,**
**Appellant–Defendant,**

v.

**Dennis CLOBES, Appellee–Plaintiff.**

No. 26A01–9202–CV–40.

Court of Appeals of Indiana,
First District.

Sept. 23, 1992.

Transfer Denied Nov. 20, 1992.

Gregory L. Noland, Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, Indianapolis, for appellant-defendant.

Charles C. Griffith, Johnson, Carroll & Griffith, Evansville, Charles R. Nixon, Fair & Nixon, Princeton, for appellee-plaintiff.

BAKER, Judge.

Blairex Laboratories, Inc. (Blairex) appeals the trial court's determination Blairex entered into an enforceable contract with Dennis Clobes (Clobes) to pay Clobes royalties from the sale of Broncho–Saline, a product Clobes helped Blairex develop. Blairex stopped making payments to Clobes, and Clobes sued to enforce the royalty agreement. After a bench trial, the court made special findings and conclusions and entered judgment in Clobes's favor. Blairex now appeals the court's conclusion Blairex's president had authority to negotiate and execute the royalty agreement with Clobes, and the conclusion the royalty agreement was enforceable.

## FACTS

The facts most favorable to the judgment reveal that in June of 1985, Clobes, a pharmacist, informed Blairex he had an idea for a sterile saline solution for use in inhalation therapy. Michael Hull (Hull), President of Blairex, told Clobes that Blairex's sales and marketing staff and Board of Directors were enthusiastic about Clobes's idea. Thereafter, Blairex developed the product with Clobes's frequent input. From time to time, Hull and Clobes discussed the royalty Blairex would pay. Hull suggested the industry standard was five percent.

On December 9, 1986, Blairex's Board of Directors held a special meeting during which it "directed Hull to get an agreement for a royalty on the Broncho–Saline with Dennis Clobes." *Record* at 409. By letter of April 13, 1987, Hull offered Clobes a

royalty of seven cents per can, which was roughly 1.9% of the product's sale price. Clobes rejected the offer by letter of April 23, 1987, and made a counteroffer of 3.5%, which was a compromise between the Hull's offer of 1.9% and Clobes's original request of 5%. Hull accepted Clobes's counteroffer, and they agreed on 5% of the sales of another product Clobes had suggested, a nasal moisturizer. Blairex's attorneys prepared a formal royalty contract reflecting the royalty percentages agreed upon. The initial draft was revised twice and culminated in an agreement both Hull, as President of Blairex, and Clobes signed. The agreement was dated May 14, 1987.

Hull signed Clobes's royalty checks until he left his employment with Blairex in April of 1988. Bruce Faulkenberg, who succeeded Hull as president, signed the royalty checks following Hull's departure. Blairex continued to pay Clobes royalties through the last quarter of 1988. After Blairex stopped paying the royalties in 1989, Clobes filed this action. After a bench trial, the court entered judgment in Clobes's favor, and Blairex now appeals.

## DISCUSSION AND DECISION

### Standard of Review

■ The trial court entered special findings of fact and conclusions of law as the parties requested under Indiana Trial Rule 52(A). When reviewing the trial court's findings and conclusions, we must determine whether the findings are sufficient to support the judgment, and whether the evidence is sufficient to support the findings. *Vanderburgh County Bd. of Commissioners v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* We will reverse the judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions of law entered on those findings. *Id.* Even if the judgment is supported by the findings of fact and conclusions of law, we may nonetheless reverse the judgment if the findings of fact are clearly erroneous based on the evidence presented. *Id.*

■ We define the clearly erroneous standard based on whether the party is appealing a negative or an adverse judgment. In this case, the trial court entered findings in favor of Clobes, the party who had the burden of proof. Blairex, therefore, appeals an adverse judgment. When the trial court enters findings in favor of the party bearing the burden of proof, we will hold the findings clearly erroneous if they are not supported by substantial evidence of probative value. *Id.* Even if the supporting evidence is substantial, we will reverse the judgment if we are left with a definite and firm conviction a mistake has been made. *Id.*

### I

### Hull's Authority to Bind Blairex

■ Blairex argues the trial court erred when it concluded Hull had authority to bind Blairex to the royalty agreement. Blairex complains Hull did not have express, implied, or apparent authority to execute the royalty agreement giving Clobes the right to receive 3.5% of the Broncho–Saline sales.

In *DPW v. Chair Lance Service, Inc.* (1988), Ind., 523 N.E.2d 1373, our supreme court discussed the doctrines of express and implied authority as they apply to a corporation's agents. The court stated:

Express authority [to act as an agent for a corporation] may be provided in the charter, the by-laws of the corporation, in a resolution of the board of directors not inconsistent with the by-laws, or other written authority such as memorandum or letter. Implied authority depends on the actual relationship of the corporation and the agent, and not what others may believe about that relationship. Implied authority of an agent binds a corporation only if the agent is performing an act that is appropriate in the ordinary course of a corporation's business; it includes incidental authority necessary, usual, and proper to effectuate the main authority expressly conferred. Implied authority may also arise from a course of conduct showing that

the corporation has repeatedly ratified acts of the same kind.

*Id.* at 1377. Unlike express and implied authority, apparent authority is created by the outward appearance a corporation has given the agent authority to act. To determine whether an agent acted with apparent authority, we ask whether the third person reasonably believed, because of some manifestation from the agent's principal, the agent possessed the authority to act. *Burger Man, Inc. v. Jordan Paper Products, Inc.* (1976), 170 Ind.App. 295, 311, 352 N.E.2d 821, 832. For the third person to reasonably believe the agent possessed the authority, the principal need not communicate with the third person directly. Placing the agent in a position to perform acts or to make representations is sufficient to clothe the agent with apparent authority. *Id.*

To determine whether Hull, in his capacity as Blairex's president, had authority to bind Blairex to the royalty agreement, we look first to the Indiana Business Corporation Law, codified at IND.CODE 23-1-17-1 to -54-3. IND.CODE 23-1-36-2, which defines the powers and duties of corporate officers, provides:

> Each officer has the authority and shall perform the duties set forth in the by-laws or, to the extent consistent with the bylaws, the duties prescribed by the board of directors or by direction of an officer authorized by the board of directors to prescribe the duties of other officers.

Article III, Section 2 of Blairex's by-laws provides:

> Section 2—Duties
>
> The principal duties of the several general officers respectively are as follows:
>
> 1. The President shall preside at all meetings of the stockholders and the Board of Directors. He shall be the chief executive officer of the corporation and shall have the general supervision, direction and active management of the property, affairs and business of the corporation, subject to the Board of Directors. He shall see that all orders and resolutions of the Board of Directors are

carried into effect. **He shall sign all certificates, stocks, bonds, deeds, leases, conveyances, commercial paper, contracts, and all other obligations and instruments in writing, unless otherwise ordered by the Board of Directors. . . .**

(Emphasis added).

Under Blairex's by-laws, Hull was responsible for signing all of Blairex's contracts, unless the Board of Directors ordered otherwise. At the Board of Director's special meeting conducted December 9, 1986, "[t]he Board directed Hull to get an agreement for a royalty on the Broncho–Saline with Dennis Clobes." *Record at 439b.* As reflected in the meeting minutes, the board expressly authorized Hull to bind Blairex to the subsequent royalty agreement.

We reject Blairex's argument Hull's authority to sign a royalty agreement with Clobes was limited. Although Hull testified that one board member told him "we'd like to see you get this fraction of a percent and have some minimum sales before any royalty would kick in," *record* at 406, this statement did not limit Hull's authority to sign only an agreement paying a fraction of a percent of the Broncho–Saline sales. The board member simply expressed the percentage he hoped Hull would obtain; the statement did not prohibit Hull from binding Blairex to an agreement to pay more than a fraction of a percent. Because Hull had express authority to sign the royalty agreement, we need not address whether Hull also had implied or apparent authority to enter into the agreement.

■ Blairex also argues the trial court erred when it concluded Blairex ratified the agreement. When a principal, with full knowledge of the facts, appropriates the fruits of an agent's unauthorized act, the principal may not complain later the agent acted without authority. *Kody Co., Inc. v. Fox & Fox Inc. Agency* (1973) 158 Ind.App. 498, 303 N.E.2d 307. We need not address the issue of whether Blairex ratified the agreement, however, because we have al-

ready concluded Hull had authority to bind Blairex.

## II

### *Enforceability*

Finally, Blairex argues the trial court erred when it concluded the royalty agreement was enforceable. At trial, Blairex argued the contract was unenforceable because it was unconscionable. Not surprisingly, Blairex lost on this issue at trial. Blairex's president negotiated the terms of the contract, and Blairex's attorneys drafted the contract. It escapes this court what Blairex could possibly have argued was unconscionable. Now Blairex argues the contract is unenforceable because it has no termination date. We need not address the merits of this argument, however. Notwithstanding Blairex's assertions to the contrary, Blairex never raised the issue of whether the contract is terminable at will to the trial court. The law is very clear: a party may not raise an issue on appeal that was not presented first to the trial court. *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 576. The issue is accordingly waived.

The judgment is in all things affirmed.

RATLIFF, C.J., and CHEZEM, J., concur.