**Shirley DRAKE, Appellant–Plaintiff,**

v.

**MAID–RITE CO., Appellee–Defendant.**

No. 71A03–9611–CV–417.

Court of Appeals of Indiana.

June 18, 1997.

Rehearing Denied Sept. 10, 1997.

Donald E. Wertheimer, South Bend, for Appellant–Plaintiff.

Joseph R. Fullenkamp, Barnes & Thornburg, South Bend, Brett J. Trout, Shearer, Templer, Pingel & Kaplan, P.C., West Des Moines, IA, for Appellee–Defendant.

## OPINION

GARRARD, Judge.

Shirley Drake ("Drake") appeals from a grant of summary judgment in favor of defendant Maid–Rite Company ("Maid–Rite") upon her claim that Maid–Rite failed to comply with Indiana Code § 23–2–2.5 *et seq.*, commonly referred to as the Indiana Franchise Act.[1] We affirm.

### FACTS AND PROCEDURAL HISTORY

In the fall of 1989, Sam Sweeden ("Sweeden") entered into a license agreement with Maid–Rite, an Iowa corporation operating restaurants in Iowa and other states. Under the agreement, Sweeden was authorized to establish a Maid–Rite restaurant at the corner of Jefferson and Logan streets in Mishawaka, Indiana ("Store # 1"). In the first half of 1990, Maid–Rite and Sweeden entered a

---

1. *See Continental Basketball Assoc. Inc. v. Ellenstein Enterprises,* 669 N.E.2d 134, 135 (Ind. 1996).

license agreement authorizing Sweeden to establish a second restaurant on Grape Road in Mishawaka ("Store # 2"). Record at 34–53. The agreement also authorized Sweeden to develop or resell additional franchises in the state of Indiana. Based on the possibility that he would develop additional franchises, Maid–Rite charged Sweeden a lesser than normal franchise fee. Additionally, the license agreement provided that Maid–Rite's approval was not required for Sweeden to sell Store # 2.

After operating Store # 2 for approximately five weeks, Sweeden advertised the store for sale in the newspaper as a Maid–Rite franchise. Drake responded to the advertisement and met with Sweeden. Sweeden did not provide Drake with any books or records relating to the restaurant's operation, but he did indicate that the restaurant generated $300 to $500 per day in gross receipts.[2] Sweeden agreed to sell Store # 2 to Drake for $40,000, which included all equipment and the Maid–Rite franchise. On July 2, 1990, a purchase agreement was drafted on Maid–Rite letterhead and signed by Drake and Sweeden. On July 20, 1990, a bill of sale, which was signed by Drake and Sweeden, provided for monthly payments on the remaining $25,000 balance, payable to Sam Sweeden, over a period of sixty (60) months. Subsequently, Drake began operating the restaurant, but it did not produce the revenues which Sweeden had indicated. She did not receive assistance from Sweeden or Maid–Rite as Sweeden had represented. She contacted Maid–Rite for the first time in September 1990, after purchasing and operating Store # 2. Drake closed the restaurant in March 1991 and subsequently filed this action. She now appeals the trial court's grant of summary judgment in Maid–Rite's favor.

### ISSUES

Of the issues Drake presents on appeal, we address only the following issue which we find dispositive.

Whether the trial court erred in finding that Sweeden's sale to Drake was not effected by or through Maid–Rite, and therefore that Maid–Rite had no duty to comply with the disclosure requirements of the Indiana Franchise Disclosure Act, Indiana Code § 23–2–2.5–1 et seq.

### STANDARD OF REVIEW

"Summary judgment shall be granted by the trial court if the designated evidentiary matter shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 813 (Ind.Ct.App.1995), *reh'g denied*; Ind. Trial Rule 56(C). "On appeal from a trial court's grant of summary judgment, the appellant has the burden of proving that the trial court erred in determining that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." *Id.* "Summary judgment shall not be reversed on the ground that there is a genuine issue of material fact unless the material fact and the relevant evidence had been specifically designated to the trial court." *Id*; Ind. Trial Rule 56(H). The rule does not require designation of the evidentiary materials in any particular manner; rather, it requires that the trial court be " 'apprised of the specific material upon which the parties rely in support of or in opposition to a motion for summary judgment....' " *Id.* (quoting *Nat. Bd. of Exam. v. Am. Osteopathic Ass'n*, 645 N.E.2d 608, 615 (Ind.Ct.App.1994)). "Further, the designation of evidentiary materials shall occur at the time of the filing of the motion or the response." *Id*; T.R. 56(C). The evidence designated to the trial court shall be viewed in a light most favorable to the nonmovant. *Peele v. Gillespie*, 658 N.E.2d 954, 957 (Ind. Ct.App.1995), *reh'g denied, trans. denied.*

### DISCUSSION AND DECISION

In Drake's complaint, she indicated that she was bringing her action "pursuant to I.C. 23–2–2.5–1 through 23–2–2.5–51...." Record at 6. Drake contends that Maid–Rite violated Indiana Code § 23–2–2.5–1 et seq., the Franchise Disclosure Act, because it

---

**2.** Sweeden indicated in his deposition, however, that his daily receipts were in "the hundred and fifty to three, four hundred dollar area, depending on the day." Record at 272.

failed to provide her with the required disclosure so that she could make an intelligent, informed decision. Drake argues that the trial court erred in awarding summary judgment because there was a genuine issue of material fact as to whether Sweeden was acting with actual authority or apparent authority as Maid–Rite's agent. She contends that if Sweeden was Maid–Rite's agent, the sale of the franchise was "effected by or through a franchisor" as prescribed in Indiana Code § 23–2–2.5–4. She concludes that since the sale was "effected by or through a franchisor," Maid–Rite failed to provide a disclosure statement as required under Indiana Code § 23–2–2.5–9.

Indiana Code § 23–2–2.5–4 provides for an exemption from the section 9 disclosure statement requirement. This exemption provides:

> The offer of sale of a franchise by a franchisee who is not an affiliate of the franchisor for his own account is exempt from section 9 *if the offer or sale is not effected by or through a franchisor.* A sale is not effected by or through a franchisor if a franchisor is entitled to approve or disapprove a different franchisee.

Ind.Code § 23–2–2.5–4 (emphasis added). In reviewing Drake's argument that the sale of the franchise was "effected by or through a franchisor," we examine her contention that Sweeden had actual or apparent authority to act as an agent of Maid–Rite.

Both parties agree that actual authority is "created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." Appellant's Brief at 11–12 (quoting RESTATEMENT (SECOND) OF AGENCY § 26 (1958)). As Maid–Rite indicates in its brief, the focus of actual authority is the belief of the *agent.*

In the affidavit submitted by Maid–Rite, Sweeden stated that he sold the restaurant to Drake "for my own account," and that

Maid–Rite "had no involvement whatsoever in the sale of the Grape Road restaurant to Ms. Shirley Drake." Record at 60. Additionally, Sweeden understood that he could transfer Store # 2 without Maid–Rite's approval, an understanding supported by the license agreement.

■ Drake argues that despite Sweeden's statements that he was acting for his own account, Sweeden was an agent because he was acting in furtherance of Maid–Rite's interest by helping Maid–Rite expand into Indiana by purchasing a franchise and reselling it. If we accept Drake's argument, franchisees who acquire a franchise and subsequently sell it are acting in the interest of and are therefore agents of the franchisor. Sweeden's franchise fee may have been reduced based on the possibility that he would develop further franchises for Maid–Rite in Indiana, but he paid at least a partial franchise fee, bought equipment, executed a lease for the physical facility, and operated the restaurant, albeit for a short period of time. Sweeden's ownership of the franchise, with all the accompanying risks of ownership, support his stated belief that he was selling the franchise for his own account. Additional support is found in Sweeden's agreement with Drake which provided that Drake would make monthly payments *to Sweeden* for the remaining $25,000 balance.

As Drake asserts, Sweeden had the right to develop or resell additional Maid–Rite franchises in Indiana. However, his transaction with Drake involved the sale of Store # 2, a restaurant that he owned and operated for his own account. Likewise, Sweeden's subsequent sale of the restaurant to Drake was for his own account. In our review of the designated materials, we find no genuine issue regarding the fact that Sweeden possessed no actual authority as an agent of Maid–Rite.[3]

■ "Apparent authority is the authority that a third person reasonably believes an agent to possess because of some manifesta-

---

**3.** Drake also contends that Maid–Rite's approval of the sale placed Sweeden in a position of authority. We find it unnecessary to address the appellee's argument that a sale is not effected by or through the franchisor solely based on an approval clause. Maid–Rite's "approval" acted as nothing more than an acknowledgment of what the license agreement provided. Pursuant to the agreement, Maid–Rite's approval was not required for Sweeden to sell the franchise.

tion from his principal." *Pepkowski v. Life of Indiana Ins. Co.*, 535 N.E.2d 1164, 1166 (Ind.1989). "The necessary manifestation is one made by the principal to a third party, who in turn is instilled with a reasonable belief that another individual is an agent of the principal." *Id.* at 1166–67. "It is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party. [Citation omitted]. Statements or manifestations made by the agent are not sufficient to create an apparent agency relationship." *Id.* at 1167.

Drake contends that Maid–Rite placed Sweeden in a position to make representations to her upon which she could reasonably believe that she was buying a franchise through Maid–Rite. She supports her contention by noting that the advertisement was for the sale of a Maid–Rite franchise, the purchase agreement was on Maid–Rite stationery, and that Maid–Rite knew and approved of the sale to Drake. However, she offers no evidence of any communication or contact, direct or indirect, between herself and Maid–Rite prior to purchasing the restaurant from Sweeden. Drake indicated in a deposition that she made no attempts to gain information on Maid–Rite, and although she remembered receiving an address or contact name for Maid–Rite from Sweeden, she made no attempt to contact Maid–Rite prior to closing the purchase.

In her affidavit submitted in opposition to summary judgment, Drake indicated that her reference to Sweeden as Maid–Rite's agent was "based upon the testimony of Sam Sweeden in his deposition in the same action." Record at 168. Sweeden's deposition was taken subsequent to litigation and well after Drake purchased the restaurant. Drake does not refer us to any evidence in the record whereby she had any contact with anyone regarding the transaction other than Sweeden. In her deposition, Drake admits that she had no contact with Maid–Rite until September 1990, after she purchased the restaurant from Sweeden.

Although it may have been reasonable for her to conclude that Sweeden had some kind of authority to act on Maid–Rite's behalf, based on Sweeden's statements that Maid–Rite would support her efforts, Indiana law requires more. "Statements or manifestations made by the agent are not sufficient to create an apparent agency relationship." *Pepkowski*, 535 N.E.2d at 1167. As we indicated in *Nobles v. Cartwright*, 659 N.E.2d 1064 (Ind.Ct.App.1995):

> In the instant case, it is not illogical for Cartwright to have assumed that those making promises concerning confidentiality and/or continued employment would not do so unless they could effectuate the promises. Thus, one may begin to understand how Cartwright might have developed the impression that either Nobles, Moreau, or Hamilton, or perhaps all of them, had some kind of authority to act upon behalf of the Lottery Commission. Regardless, Indiana law requires that to establish an apparent authority, it is essential that there be some form of communication, direct or indirect, by the principal which instills a reasonable belief of the agent's authority in the mind of the third party. [Citations omitted]. *Statements, manifestations, or bald assertions made by the purported agent are, by themselves, insufficient to create an apparent agency relationship.* [Citations omitted].

*Id.* at 1080 (emphasis added).

Aside from Sweeden's statements, Drake alludes to Sweeden's use of Maid–Rite stationery for the purchase agreement and the Maid–Rite logo for the advertisement. However, use of franchise trademarks and commercial symbols are benefits that are typically gained by a franchisee who pays for the right to associate his business with the recognition of a franchise. Maid–Rite authorizing Sweeden, as a franchisee, to use Maid–Rite's letterhead and logo was not a sufficient act to clothe Sweeden with apparent authority.[4]

4. In *Pepkowski v. Life of Indiana Ins. Co.*, 535 N.E.2d 1164 (Ind.1989), an insurance company permitted the purported agent to possess its application form and benefits booklet and accepted the plaintiff's application. Our supreme court found that "[t]hese acts are not a sufficient manifestation to clothe Wytrykus with apparent au-

Drake fails to designate evidence, and we find none, which establishes some form of communication *by Maid–Rite* which instilled a reasonable belief in Drake's mind that Sweeden had the authority to act on Maid–Rite's behalf.

Based on the evidence specifically designated to the trial court, we find no genuine issue of material fact regarding the applicability of the Franchise Disclosure Act to the transaction between Sweeden and Drake. Sweeden did not possess actual or apparent authority as an agent of Maid–Rite. Therefore, Sweeden's sale to Drake was "not effected by or through" Maid–Rite, and Maid–Rite did not violate the Franchise Disclosure Act. Accordingly, the trial court did not err in determining that Maid–Rite was entitled to judgment as a matter of law because it had no duty to comply with the disclosure requirements of the Franchise Disclosure Act in the transaction between Sweeden and Drake.

Affirmed.

HOFFMAN and RUCKER, JJ., concur.

thority to bind Life of Indiana and Quinet." *Id.* at 1167.

We also note that the definition of "franchise" provided in Indiana Code § 23–2–2.5–1(a)(2) means a contract by which "the operation of the franchisee's business . . . is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate. . . ."