**MENARD, INC., Appellant–Plaintiff,**

v.

**DAGE–MTI, INC., Appellee–Defendant.**

**No. 46A03–9708–CV–276.**

Court of Appeals of Indiana.

Sept. 3, 1998.

Michael A. Wukmer, John J. Morse, Ice Miller Donadio & Ryan, Indianapolis, Gene Jones, Mark Lienhoop, Newby Lewis Kaminsky & Jones, LaPorte, for Appellant–Plaintiff.

Paul J. Peralta, D. Lucetta Pope, Baker & Daniels, South Bend, for Appellee–Defendant.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Menard, Inc. (Menard) appeals the trial court's judgment in favor of Defendant–Appellee Dage–MTI, Inc. (Dage).

We affirm.

### ISSUES

We address three of the four issues raised

by Menard, and restate the issues as [1]:

1. Whether the trial court erred in determining that Dage's company president did not have express authority to sell certain real estate to Menard.

2. Whether the trial court erred in determining that Dage's company president did not have apparent authority to bind Dage to a purchase agreement.

3. Whether the trial court erred in refusing to grant partial summary judgment on the issue of the validity of the purchase agreement.

## FACTS AND PROCEDURAL HISTORY

Dage is a closely held Indiana corporation which manufactures specialized electronics equipment. At all times relevant to this appeal, Dage was governed by a six-member board of directors. According to Dage's by-laws, the board could not act without the written consent of all of its members. The board consisted of Ronald and Lynn Kerrigan (husband and wife), Louis Piccolo (a financial consultant retained by Ronald Kerrigan), Arthur and Marie Sterling (husband and wife), and William Conners. Arthur Sterling ("Sterling") had served as president of Dage for at least twenty years at the time of the trial on this matter. Of the six directors, only Arthur and Marie Sterling resided in Indiana.

For many years, Sterling operated Dage without significant input from or oversight by the board. Over the course of the summer and early fall of 1993, however, Kerrigan took steps to subject Dage management to board control. Kerrigan hired New York-based financial consultant and future board member Louis Piccolo ("Piccolo") to assess the company's performance. Kerrigan also retained New York attorney Gerald Gorinsky ("Gorinsky") to represent his interests concerning Dage.

In the summer of 1993, on behalf of the majority shareholders, Gorinsky criticized Sterling numerous times for overstepping his authority as Dage president and told Sterling that he could no longer do so. In late October of 1993, the Dage shareholders met in the New Jersey office of Neil Pupris, an attorney also retained by Kerrigan, to discuss an offer by Sterling to purchase the Kerrigans' shares of Dage. During the course of the meeting, Sterling first informed other directors that Menard had expressed interest in purchasing a thirty acre parcel of land owned by Dage and located in the Michigan City area.

On October 30, 1993, Menard forwarded a formal offer to Sterling pertaining to the purchase of 10.5 acres of the thirty acre parcel. Upon receipt of the offer, Sterling did not contact Menard to discuss the terms and conditions of the offer. Instead, on or about November 4, 1993, he forwarded the offer to all the Dage directors with a cover note acknowledging that he required board approval to accept or reject the offer.[2] Kerrigan, Piccolo, and Gorinsky determined that the offer should be rejected due to the collective effect of certain sections of the purchase agreement submitted by Menard, as well as co-development obligations that the offer imposed on Dage.

Although Sterling viewed the offer favorably, he let the offer lapse. Later, he informed Menard's agent, Gary Litvin, that members of Dage's board of directors objected to various provisions of the offer.

On November 30, 1993, Sterling called Kerrigan and informed him that Menard would make a second offer. The second offer would be for the entire thirty acre parcel. Sterling, Kerrigan, Piccolo, and Gorinsky discussed the forthcoming offer by teleconference later that afternoon. Sterling informed the others of a two-part proposed resolution that he had drafted which authorized Sterling to "offer and purchase" certain real estate and to "offer and sell" the thirty acre parcel. Sterling was told to change the "of-

---

1. The fourth issue pertaining to damages is rendered moot by our decision.

2. The note read as follows: "Find enclosed offer to purchase 10.5 [acres] of our 30 [acre] parcel. We are in the process of reviewing offer contin-

gencies, cost and timing to develop to point of sale. I will keep you informed as board of directors' approval will be required before acceptance or rejection of this offer. /s/ Art Sterling." (R. 1755).

fer and sell" provision to "to offer for sale." He was told that he could purchase the other real estate, but could only "offer" the thirty acre parcel to Menard at a particular price. Kerrigan, Piccolo, and Gorinsky informed Sterling that he could solicit offers, but that he could not negotiate the terms of a sale. Gorinsky reminded Sterling that any offer from Menard would require board review and acceptance, and he instructed Sterling to forward any offer to the board for approval or rejection. Finally, Gorinsky informed Sterling that if Menard submitted an agreement with the same objectionable provisions as the first offer, Kerrigan would reject it. Sterling agreed to follow the instructions of the board "as long as I don't have to pay for" Gorinsky's and Piccolo's services in reviewing the offer. Based upon the discussion, Sterling drafted a new resolution, which stated that he was authorized "to take such actions as are necessary to offer for sale our 30 acre parcel ... for a price not less than $1,200,-000." (R. 1122–1125).

On December 6, 1993, Sterling informed Piccolo that Menard had agreed to make an offer of $1,450,000. Piccolo reminded Sterling of his obligation to secure board approval of the offer.

Menard forwarded a second proposed purchase agreement to Sterling. This agreement contained the same provisions that the board found objectionable in the first proposed agreement. Nevertheless, during the week of December 14, 1993, and unknown to any other member of the Dage board, Sterling negotiated several minor changes in the Menard agreement and then signed the revised offer on behalf of Dage. The offer included a provision stating that Sterling was "duly authorized" to sign the agreement and to bind Dage "in accordance with the terms of [the agreement]." (R. 1144, 1149).

Upon learning of the signed agreement with Menard, the board instructed Sterling to extricate Dage from the agreement. Later, the board hired counsel to inform Menard of its intent to question the agreement's enforceability. Menard ultimately filed suit to require Dage to specifically perform the agreement and to secure the payment of damages. Menard initially filed a motion for partial summary judgment, which was denied. After a trial, the trial court ruled in favor of Dage. In doing so, it issued specific findings of fact and conclusions of law as requested by the parties pursuant to Ind.Trial Rule 52. Menard now appeals.

## DISCUSSION AND DECISION
### STANDARD OF REVIEW

■ A trial court's judgment based upon special findings and conclusions will be reversed only when clearly erroneous. T.R. 52(A). A judgment is clearly erroneous if not supported by the conclusions of law. *Gigax v. Boone Village Ltd. Partnership*, 656 N.E.2d 854, 857 (Ind.Ct.App.1995). Conclusions of law are clearly erroneous if unsupported by the findings of fact. *Id.*

■ We define the clearly erroneous standard based upon whether the party is appealing a negative or an adverse judgment. *Blairex Laboratories, Inc. v. Clobes*, 599 N.E.2d 233, 235 (Ind.Ct.App.1992), *trans. denied*. In this case, Menard had the burden of proof and it is therefore appealing from a negative judgment. When a trial court enters findings in favor of the party with the burden of proof, we will hold the findings clearly erroneous only if the evidence is uncontradicted and will support no reasonable inference in favor of the finding. *Taxpayers Lobby of Indiana, Inc. v. Orr*, 262 Ind. 92, 311 N.E.2d 814, 819 (1974).

## I. EXPRESS AUTHORITY

Menard contends that the trial court clearly erred in concluding that Sterling lacked express authority to sign the agreement. It argues that the board's resolution granted Sterling unlimited authority to enter into an agreement for the sale of the thirty acre parcel.

■ A fundamental tenet of agency law holds that "an agent has no authority to act contrary to the known wishes and instructions of his principal." *Old Security Life Insurance Co. v. Continental Illinois National Bank and Trust Co.*, 740 F.2d 1384, 1391 (7th Cir.1984). Furthermore, "an agent is authorized to do [only] what it is reasonable for him to infer that the principal de-

sires him to do in light of the principal's manifestations and the facts as he knows … them or as he should know them at the time." RESTATEMENT (SECOND) OF AGENCY § 33 and cmt. a (1957).

■ In the present case, the trial court found that the original resolution was drafted by Sterling to give him the authority to "offer and to sell" the thirty acre parcel. (Finding of Fact # 35). The court additionally found that Sterling was informed that the language of the resolution should be changed to "offer for sale" with the intent that Sterling would solicit offers at a particular price. (Findings of Fact # 37–40). The court also found that board members informed Sterling that any offer made by Menard would require board review and acceptance. (Finding of Fact # 41). The court further found that Sterling agreed to the board's limitation of authority as long as he didn't have to pay for Piccolo's and Gorinsky's review of the agreement. (Finding of Fact # 41).

The aforementioned findings are supported by the evidence in the record. Furthermore, the findings are sufficient to support the trial court's conclusion that Sterling "knew or should have known" that he was only authorized to solicit offers and that the acceptance of the details of an actual agreement for sale could only be accomplished by the board. Thus, we find that the trial court did not err in concluding that Sterling lacked express authority to complete the sale of the thirty acre parcel.

Menard contends that Sterling's express authority was derived from the resolution and that the resolution provided him with the ability to bind the company to an agreement to sell the thirty acre parcel. Menard cites *Blairex* in support of its contention.

In *Blairex*, the agent was authorized to contract with the plaintiff on behalf of the principal, Blairex Laboratories. One member of the board stated that the board would *like* to see the agent enter into a contract with the plaintiff that would place certain limitations on the royalties the plaintiff would earn. We determined that the principal was simply expressing the percentage the speaker *hoped* the agent would obtain and that this

hope did not prohibit the agent from binding the principal to a contract requiring the payment of a higher percentage. 599 N.E.2d at 236.

In the present case, however, the board's expressions were not merely aspirational. The board specifically informed Sterling that the resolution limited his authority to only the solicitation of offers for the purchase of the property. Furthermore, the resolution did not provide Sterling with the authority to "offer and sell" the property, but to "offer for sale." *Blairex* is inapposite, and the trial court's judgment is not clearly erroneous.

## II. APPARENT AUTHORITY

Menard contends that the trial court clearly erred in concluding that Sterling lacked apparent authority to sell the thirty acre parcel. Menard argues that the use of Sterling as the sole negotiator was an indirect manifestation by Dage that Sterling could enter into a binding agreement. Menard also argues that there were numerous documents which supported its conclusion that Sterling possessed the requisite authority to bind Dage in the sale of the property.

■ Apparent authority refers to a third party's reasonable belief that the principal has authorized the acts of its agent. *Pepkowski v. Life of Indiana Insurance Co.*, 535 N.E.2d 1164, 1166–67 (Ind.1989). It arises from the principal's indirect or direct manifestations to a third party, and it cannot arise from the representations or acts of the agent. *Id.*; *Drake v. Maid–Rite Co.*, 681 N.E.2d 734, 737–38 (Ind.Ct.App.1997), *reh'g denied.*

Menard makes much of the fact that Sterling was the sole negotiator, and it cites *Pollas v. Hardware Wholesalers, Inc.*, 663 N.E.2d 1188 (Ind.Ct.App.1996), *reh'g denied,* and related cases, as support for its proposition that use of Sterling as a sole negotiator was an indirect manifestation by Dage that Sterling had authority to bind Dage to the sale of the thirty acre parcel.

In *Scott v. Randle*, 697 N.E.2d 60 (Ind.Ct. App.1998), *reh'g denied,* we reiterated the basic holdings of *Pollas* and related cases.

We held that an agent possesses apparent authority when a third person reasonably believes the agent possesses authority "due to some act by the principal." *Id.* at 67. We additionally held that "[p]lacing an agent in a position to act and make representations which appear reasonable is sufficient to endow him with apparent authority." *Id.* We noted that a communication of authority made solely by the agent is inadequate, but went on to hold that "when a party places an agent in the position of sole negotiator on his behalf, it may be reasonable for the third person to believe that the agent possesses authority to act for the principal." *Id.*

■ In its conclusions of law in the present case, the trial court acknowledged that the use of an agent as a sole negotiator may clothe the agent with apparent authority to bind the principal. (Conclusion of Law # 16). However, the trial court concluded that, because Sterling had informed Menard of his need for board approval before entering into the agreement for sale of the property, Menard could not have reasonably believed that Sterling possessed authority to bind Dage to the agreement. (Conclusion of Law # 21). Accordingly, the trial court concluded that any possible indirect manifestation of apparent authority to bind Dage by using Sterling as sole negotiator was vitiated by Menard's knowledge that Sterling had to go to the board to obtain approval. (Conclusion of Law # 22). The trial court further concluded that this knowledge should have put Menard on notice that Sterling lacked apparent authority to sell the thirty acre parcel and that this knowledge prevented Dage from being bound by Sterling's actions. (Conclusions of Law # 23–24).

Menard does not challenge the trial court's findings of fact supporting the conclusions of law delineated above; neither does it directly question the propriety of the court's conclusions. Instead, Menard relies on *Pollas* and related cases in the belief that the use of an agent as a sole negotiator mandates the conclusion that the agent had apparent authority to bind the principal. These cases permit a finding of apparent authority; they do not require such a finding.

Menard argues that there were many documents which evidenced Sterling's authority to bind Dage in the sale of the thirty acre parcel. However, the trial court found that Menard believed Sterling could represent Dage in the extraordinary sale of its real property *solely* because: (1) Sterling held himself out as the president of Dage; and (2) Sterling represented that he signed the agreement by authority of Dage's board of directors. (Finding of Fact # 67). Menard cannot now rely on documents which did not form a basis for its mistaken belief.

### III. SUMMARY JUDGMENT

■ Menard contends that the trial court erred in denying its motion for partial summary judgment. It is adamant that the evidence presented at trial to establish the lack of Sterling's authority was not designated to the trial court in answer to Menard's pretrial motion. Our examination of the record, however, reveals that Dage designated evidence indicating, among other things, that Menard knew its first offer was rejected because the board found certain contingencies unacceptable and that Sterling lacked the authority to finalize a sale without board approval. Dage also designated evidence indicating that the intent of the board resolution was to allow Sterling to solicit offers, not to enter into a binding agreement. The designated evidence was sufficient to establish the presence of genuine issues of material fact. Therefore, the trial court did not err in denying Menard's motion.

### CONCLUSION

The evidence in the record supported the trial court's findings of fact, and the findings of fact supported the trial court's conclusions of law. Thus, the trial court did not clearly err in determining that Sterling could solicit offers for the purchase of the thirty acre parcel but could not bind Dage to an agreement which contained provisions already rejected by the board. Furthermore, the trial court did not err in denying Menard's motion for partial summary judgment.

Affirmed.

BAILEY and NAJAM, JJ., concur.