

FILED

Apr 25 2023, 9:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Zachary J. Stock, Attorney at Law, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Theordore E. Rokita
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joshua D. Clark,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 25, 2023

Court of Appeals Case No.
22A-CR-2421

Appeal from the Hendricks
Superior Court

The Honorable Rhett M. Stuard,
Judge

Trial Court Cause No.
32D02-2105-F4-27

**Opinion by Judge Tavitas**
Judges Vaidik and Foley concur.

**Tavitas, Judge.**

## Case Summary

[1] Joshua Clark appeals his conviction for child solicitation, a Level 4 felony. Clark argues that the trial court abused its discretion by denying his request for a jury instruction on the defense of entrapment. We disagree and, accordingly, affirm.

## Issue

[2] Clark raises one issue on appeal, which we restate as whether the trial court abused its discretion by denying Clark's request for a jury instruction on the defense of entrapment.

## Facts

[3] Predator Catchers, Inc. ("PCI") is a 501(c)(3) organization founded by Eric Schmutte. PCI's mission is to "expos[e] men and women that are looking to engage in sexual activity with minors." Tr. Vol. II p. 132. To expose, or "catch," child predators, PCI uses images from adult volunteers to create decoy online profiles and pose as minors online. PCI then posts online videos of PCI confronting individuals who solicit sex from the decoy profiles. PCI's efforts have led to over three hundred "catches" and approximately ten convictions.

[4] On March 28, 2021, Clark, a thirty-six-year-old police officer with the Portland Police Department, messaged a PCI decoy profile named "Mackenzie,"[1]

---

[1] The photos for "Mackenzie's" profile were supplied by an adult PCI volunteer.

which was operated by Schmutte on Skout, a social app. Over the next several weeks, Clark and "Mackenzie" communicated over text and several other social apps, including Kik and Snapchat.

[5] In a text message sent on April 15, 2021, "Mackenzie" informed Clark that she was age fourteen.[2] Clark responded, "If I don't know[,] I can't say anything . . . So delete that message." Ex. Vol. IV p. 47. Clark then texted "Mackenzie," "Your [sic] 18 right[.]" *Id.* On several other occasions, "Mackenzie" informed Clark that she was age fourteen, and Clark instructed her to delete the message and say she was age eighteen.

[6] Over the course of their communications, Clark sent the following messages to "Mackenzie": "What do you wanna do to me[?]"; "I want all of you"; "Damn I wanna eat you"; "[L]et's meet [and] see if we like each other[.] [W]ho knows[,] maybe just get a hotel room"; "Sit on me"; "Make you c*m all over me"; "I'm trying to get with you"; and "Have to see you naked before I know you['re] the best lol." *Id.* at 60-61, 66, 81, 144, 146, 149, 164. When "Mackenzie" told Clark she was "[a]bout to shower," Clark responded, "I wanna see." *Id*. at 128. Clark also changed the settings for their Snapchat communications so that messages would disappear immediately after being viewed;[3] referred to

---

[2] It is unclear if "Mackenzie" also informed Clark of her age at an earlier time.

[3] The ability to make photographs and message disappear after being viewed is an inherent feature of the Snapchat app.

Mackenzie as "hun" and "baby"; and requested that "Mackenzie" send photos of herself, including "a[n] old pic," multiple times. *Id.* at 36, 60, 66.

[7] Clark and "Mackenzie" arranged to meet at an Olive Garden in Avon on May 13, 2021. Clark texted "Mackenzie," "Better not be cops waiting on me lol." *Id.* at 110. When Clark arrived, Schmutte and several PCI volunteers confronted Clark and livestreamed the encounter on Facebook. Schmutte and the volunteers stated several times that Clark was free to leave, however, Clark chose to speak with them for several minutes in the Olive Garden parking lot.

[8] One of the livestream's viewers was Avon Police Department Detective Jacob Boggess, who viewed the livestream on his personal Facebook feed. Detective Boggess testified that he treated the livestream like "a tip" and began his own investigation into Clark's communications with "Mackenzie." Tr. Vol. II pp. 246-47. Detective Boggess contacted Schmutte, who provided his cell phone along with photos and videos of Clark's communications with "Mackenzie." Detective Boggess verified that Clark's phone number was the one that texted "Mackenzie" and that Clark drove to the Avon Olive Garden on May 13. Detective Boggess also learned that Clark had researched online "the criminal code for child solicitation" and whether Clark had "a warrant or reports to that effect." Tr. Vol. III p. 8.

[9]     On May 25, 2021, the State charged Clark with child solicitation, a Level 4 felony.[4] The trial court held a jury trial in July 2022.

[10]    Schmutte testified that PCI's decoy profiles never initiate communication with other individuals online and are never the first to propose a meeting. Schmutte also testified to the following regarding PCI's relationship with law enforcement: PCI is not affiliated with any police department and does not receive any training, advice, or assistance from law enforcement. PCI does not notify law enforcement until after PCI "catches" a person who has solicited sex from a decoy profile. PCI does not operate in jurisdictions where "the prosecutor in that county does not want us doing it there." Tr. Vol. II p. 138. PCI receives all of its funding from private donations.

[11]    Detective Boggess testified regarding his investigation into Clark. He further testified that PCI was "a civilian group" and not "related [to] law enforcement in any way . . . ." and that he did not assist PCI in "catching" Clark. *Id*. at 245.

[12]    At the conclusion of the presentation of evidence, Clark requested a jury instruction on the defense of entrapment. The trial court found that there was insufficient evidence that PCI and Schmutte were agents of law enforcement and denied the requested jury instruction.

---

[4] The State also charged Clark with one count of attempted child solicitation, a Level 5 felony. The State moved to dismiss this charge on June 8, 2022, and the trial court granted the motion the following day.

[13] The jury found Clark guilty of child solicitation, a Level 4 felony. The trial court entered judgment of conviction and sentenced Clark to six years in the Department of Correction. Clark now appeals.

## Discussion and Decision

[14] Clark argues that the trial court abused its discretion by denying his request for a jury instruction on the defense of entrapment. Specifically, Clark argues that Schmutte and PCI were "apparent agent[s]" of law enforcement.[5] Appellant's Br. p. 7. We disagree.

[15] We review a trial court's refusal to give a requested jury instruction for an abuse of discretion. *Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015). We consider: "'(1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given.'" *Id.* (quoting *Guyton v. State*, 771 N.E.2d 1141, 1144 (Ind. 2002)). "A trial court may refuse a jury instruction only when '[n]one of the facts' in the record would support the legal theory offered in the instruction. *Humphrey v. Tuck*, 151 N.E.3d 1203, 1207 (Ind. 2020) (quoting *Sims v. Huntington*, 271 Ind. 368, 373, 393 N.E.2d 135, 139 (1979)).

---

[5] Clark does not argue that any other type of agency relationship existed.

[16] The defense of entrapment is defined by Indiana Code Section 35-41-3-9(a), which provides:

> It is a defense that:
>
> > (1) the prohibited conduct of the person was the product of a law enforcement officer, or his **agent**, using persuasion or other means likely to cause the person to engage in the conduct; and
> >
> > (2) the person was not **predisposed** to commit the offense.

(Emphasis added).

[17] An agency relationship may be actual, implied, or apparent. *See Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210-11 (Ind. 2000). As relevant here, apparent agency does not depend on the principal's express or implied authorization for the agent to act on the principal's behalf; rather, apparent agency exists when "a principal's manifestations induce a third party to reasonably believe there is a principal-agent relationship." *Arrendale v. Am. Imaging & MRI, LLC*, 183 N.E3d 1064, 1068 (Ind. 2022); *see also Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1167 (Ind. 1989) ("It is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party."). "[T]he placing of the agent in a position to perform acts or make representations which appear reasonable to a third person is a sufficient manifestation to endow the agent with apparent authority." *Gallant Ins. Co. v. Isaac*, 751 N.E.2d 672, 677 (Ind. 2001).

[18] Clark directs us to no caselaw holding that our entrapment statute encompasses apparent agents of law enforcement. We need not decide that issue, however, because we find that there are no facts in the record that would support an apparent agency relationship between Schmutte or PCI and law enforcement.

[19] PCI is a private, civilian organization separate and apart from law enforcement. PCI receives no training, advice, or assistance from law enforcement, and receives all of its funding from private donations. PCI also does not notify law enforcement until after they "catch" someone, and here, Detective Boggess discovered PCI's allegations against Clark by viewing the livestreamed encounter on his own personal Facebook feed and only contacted Schmutte after PCI livestreamed the encounter. Further, Detective Boggess treated the livestream merely as "a tip" from which he launched his own, independent investigation into Clark. Tr. Vol. II p. 246-47. Clark also concedes that there was no "cooperation" between Schmutte or PCI and law enforcement. Reply p. 4.

[20] Clark argues that "[b]y not doing anything to stop Schmutte and actively accepting his 'help,' the State of Indiana has placed him in a position to perform acts that appear to any reasonable person to endow him with the power of the [S]tate." Appellant's Br. p. 9. Similarly, in Clark's Reply Brief, Clark makes the reference that "Batman is not the apparent agent of Commissioner Gordon simply because the Commissioner puts up the Bat Signal. Batman is an apparent agent because everyone knows Commissioner Gordon reaps the

rewards for Batman's efforts." Reply p. 6. We disagree.[6] First, law enforcement lit no "Bat-signal" calling Schmutte and PCI to action. Rather, as we have explained, law enforcement did not become involved until after PCI livestreamed its encounter with Clark. Moreover, law enforcement agencies routinely rely on the general public for tips, evidence, and other information, and the mere collection of that information says nothing about whether the State has authorized an individual to act on its behalf. In addition, such an interpretation of our entrapment statute would seem to convert civilians into law enforcement agents only after the civilian's efforts have been completed. *Cf. Drake v. Maid-Rite Co.*, 681 N.E.2d 734, 738 (Ind. Ct. App. 1997) (holding that franchisee lacked apparent authority in selling restaurant when purchaser "offer[ed] no evidence of any communication or contact, direct or indirect, between herself and [franchisor] prior to purchasing the restaurant from [franchisee]").

[21] Clark also relies on the fact that PCI does not operate in jurisdictions where law enforcement agencies do not wish them to operate. PCI's strategic decisions, however, are at most manifestations by PCI but are not manifestations by law enforcement and, therefore, cannot support a finding of apparent agency. *See Pepkowski*, 535 N.E.2d at 1167 ("Statements or manifestations made by the

---

[6] Nor is it clear that Batman is an agent of Commissioner Gordon. *See* Joshuah Lisk, Note, *Is Batman A State Actor?*, 64 Case W. Res. L. Rev. 1419, 1440 (Spring 2014) (concluding, in the context of the Fourth Amendment, "[t]he government's lack of knowledge and acquiesce[nce] to Batman's actions is sufficient to create a separation between private conduct and official state action.").

agent are not sufficient to create an apparent agency relationship."). Law enforcement's discouragement of PCI operating in certain jurisdictions, meanwhile, manifests the opposite of an agency relationship. In short, the record simply contains no manifestations from Detective Boggess or any other law enforcement authority that suggests Schmutte or PCI were acting as agents of law enforcement.

[22] Even if an apparent agency relationship existed, however, Clark fails to demonstrate that he was not predisposed to commit the offense.[7] We have explained that the critical question regarding predisposition "'is whether criminal intent [was] deliberately implanted in the mind of an innocent person[.]'" *Ferge v. State*, 764 N.E.2d 268, 271 (Ind. Ct. App. 2002) (quoting *Kats v. State*, 559 N.E.2d 348, 353 (Ind. Ct. App. 1990)) (internal quotation marks omitted). That is not the case here.

[23] "Mackenzie" informed Clark on several occasions that she was age fourteen, and Clark repeatedly instructed her to delete the message and say that she was age eighteen. Clark attempted to conceal his communications with "Mackenzie" by arranging for their Snapchat messages to disappear immediately after being viewed. Clark also repeatedly asked for pictures of "Mackenzie," including "a[n] old pic" of her, and, after Clark and

---

[7] Clark's argument on this issue consists of three sentences and is devoid of any citation to caselaw or other authority. *See* Ind. App. R. 46(A)(8)(a) (requiring that each argument be supported be "cogent reasoning" and "citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on.").

"Mackenzie" arranged to meet at the Olive Garden, Clark texted, "Better not be cops waiting on me lol." Ex. Vol. IV pp. 60, 110. Clark's conduct suggests that he knew his communications with "Mackenzie" were illegal, yet he continued to engage with and solicit her.

[24] We find that the evidence does not indicate that: 1) Schmutte or PCI were apparent agents of law enforcement; and 2) Clark was not predisposed to commit child solicitation. Accordingly, the record contains no evidence to support a jury instruction on the defense of entrapment, and the trial court did not abuse its discretion.

## Conclusion

[25] The trial court did not abuse its discretion by denying Clark's request for a jury instruction on the defense of entrapment. Accordingly, we affirm.

[26] Affirmed.

Vaidik, J., and Foley, J., concur.